Joseph E. **SIMANONOK**,
Plaintiff-Appellant,

v.

Germaine B. **SIMANONOK**, et al.,
Defendants-Appellees.

No. 84–3811.

United States Court of Appeals,
Eleventh Circuit.

April 29, 1986.

Joseph E. Simanonok, pro se.

Before VANCE and HATCHETT, Circuit Judges, and SWYGERT,[*] Senior Circuit Judge.

SWYGERT, Senior Circuit Judge:

Joseph and Germaine Simanonok were married on September 8, 1948 in Madison, Maine, and divorced on May 1, 1972 in Orange County, California.[1] California is one of eight states to apply community property principles to the division of property in divorce proceedings.[2] Cal.Civ.Code § 4800(a). In community property states each spouse has a one-half interest in all property acquired by either spouse during the term of the marriage. Under California law pension benefits are community property to the extent that they are earned through employment occurring during the course of a marriage. *In re Gillmore*, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1, 3 (1981).

Joseph Simanonok, the plaintiff-appellant in this case, retired in 1969 from the United States Air Force after twenty years of active duty with the rank of major. This period of service entitles him to retirement pay. 10 U.S.C. §§ 3911, 3929. In its judgment of dissolution the Superior Court of California found that this retirement pay was community property under California law and ordered Simanonok to pay 23/54ths of his retirement pay, "as and when" he received it, to his former wife.[3]

The proposition that federal military retirement pay can be considered community property for purposes of a state divorce decree has not always been certain. In *In re Fithian*, 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449, *cert. denied*, 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974), and again in *In re Milhan*, 27 Cal.3d 765, 166 Cal.Rptr. 533, 613 P.2d 812 (1980), the California Supreme Court held that military retirement pay could be considered by a court in the division of marital property subsequent to a divorce. In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court disagreed holding that there was a conflict between the military retirement scheme and the community property principles asserted by the California courts. The Court invoked the Supremacy Clause of the Constitution to reverse a California divorce decree applying community property principles to military retirement pay. *See also Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (striking down California's application of community property principles to federal Railroad Retirement benefits).

In response to the *McCarty* decision Congress, in 1982, enacted the Former Spouse Protection Act, 10 U.S.C. § 1408. The Act provides that a court may treat military retirement pay "either as property solely of the [retiree] or as property of the [retiree] and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). According to the legis-

---

[*] Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

[1] An interlocutory judgment of dissolution of marriage was issued by Judge Van Tatenhove of the Superior Court of California on May 1, 1972. A final decree of dissolution of marriage was entered on January 4, 1973.

[2] Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington.

[3] It is not clear from the record how the Superior Court arrived at the 23/54ths fraction. The judgment of dissolution noted that the Simanonoks had been married for twenty-three years and that Major Simanonok's retirement pay had been accumulating for twenty-seven years. The record reveals only that Simanonok retired in 1969 after twenty years of service. We do not suggest anything improper about the division of property in the divorce decree, we may dismiss the mathematical incongruity as a curiosity resulting from the incompleteness of the record.

We note also that Major Simanonok's payment record was, at first, not perfect. He concedes in his complaint that he was briefly imprisoned in November 1973 for failure to remit his former spouse's share of his retirement pay. There are no present allegations of payment arrears. The record contains only the uncontradicted statement of Simanonok that he is in full compliance with the divorce decree.

lative history the "primary purpose" of the Act was to reverse the effect of the *McCarty* decision. S.Rep. No. 97–502, 97th Cong., 2d Sess. 1, *reprinted in* 1982 U.S. Code Cong. & Ad. News 1596. The Act "would accomplish this objective by permitting Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, amendment or legal separation." *Id.*[4]

In a letter received March 8, 1983, Germaine Simanonok asked the Air Force to initiate direct payment (garnishment) of her portion of her former husband's retirement pay. She made no allegations that Major Simanonok had been remiss in making those payments on his own initiative. In a letter dated March 22, 1983, Mr. Simanonok was informed by an Air Force claims examiner that Germaine Simanonok's application appeared to be valid. He was afforded an opportunity to show whether the court order his ex-wife had submitted had been amended, superseded, or set aside. In a letter dated April 9, 1983, Simanonok protested the planned garnishment of his retirement pay, but he did not, indeed could not, claim that his divorce decree had been amended, superseded, or set aside. Instead, in the April letter, and again in a letter dated May 20, 1983, Simanonok raised a series of legal objections to the execution of the Former Spouse Protection Act against his retirement pay. Simanonok's objections were not well-received by Air Force authorities.[5]

Appellant thereupon filed a complaint in the federal district court for the Middle District of Florida on December 27, 1983, alleging violations of an assortment of constitutional and legal rights and seeking millions of dollars in punitive and compensatory damages. The action was filed against his former spouse, the Secretary of Defense, and various Air Force officials.[6] On April 30, 1984, the Government filed a motion to dismiss for lack of federal subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).[7] On September 17, 1984 the district court granted the motion declaring that the plaintiff's complaint is "essentially a challenge to the validity of his California divorce decree."

I

We begin by observing that it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. "[T]he test is whether the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 70, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978). In *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the Supreme Court reversed lower court rulings that the complaint in that case had failed to establish federal subject matter jurisdiction. The Court noted that the petitioners' assertion "cannot be said to be so insubstantial, implausible, foreclosed by prior decisions of this Court, or other-

---

**4.** The Former Spouse Protection Act is not the only federal statute permitting state courts to consider federal retirement pay in their division of property pursuant to a divorce decree. 42 U.S.C. § 659 authorizes the federal government to recognize a valid state court order relating to the salary or retirement pay of a member of the military or government employee failing to keep up with alimony or child support payments. 5 U.S.C. § 8345(j) authorizes the Government to comply with the terms of all court-ordered property settlements in connection with the divorce of non-military federal employees. Finally, 22 U.S.C. §§ 4044 *et seq.* entitles the former spouse to receive up to one-half of a Foreign Service employee's retired pay pursuant to a valid state court order.

**5.** There is no indication in the record that plaintiff's letter elicited any formal response from the defendants. Direct payment was initiated. The pay actually garnished from Major Simanonok amounts to $797.00 per month.

**6.** On March 5, 1984 the Government moved to dismiss for insufficient service of process. The motion was denied on April 20, 1984 upon proof of personal service.

**7.** Both Simanonok and the Government moved for summary judgment. These motions were not ruled upon and are not at issue here.

wise completely devoid of merit as not to involve a federal controversy." 414 U.S. at 666, 94 S.Ct. at 777. *See also Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974). In the seminal case of *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Court stated that:

> Jurisdiction ... is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cuase of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.... A suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

327 U.S. at 682, 66 S.Ct. at 776.

This court has also erected formidable barriers to dismissal for want of subject matter jurisdiction. In *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981),[8] the court observed that "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson,* 645 F.2d at 415.[9] The court went on to state that a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action unless the claim "has no plausible foundation or is clearly foreclosed by a prior Supreme Court decision." *Id.* at 416.

In *Eaton v. Dorchester Development,* 692 F.2d 727 (11th Cir.1982), the court noted that "[w]here the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." *Id.* at 733. *See also Brock v. Writers Guild,* 762 F.2d 1349, 1352, n. 3 (9th Cir.1985). In the present case the existence of subject matter jurisdiction depends upon the plausibility of Major Simanonok's federal claims. Our task in reviewing the district court's dismissal has thus been immensely simplified by prior authority. Where the existence of federal subject matter jurisdiction is based on alleged violations of federal law, a district court may not dismiss under Rule 12(b)(1) unless it determines that the claimed violations are completely meritless.[10]

We are even more reluctant to approve a dismissal under Rule 12(b)(1) where the plaintiff, as in this case, is proceeding *pro se.* It is well-established that a *pro se* complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). *See Cook v. Whiteside,* 505 F.2d 32, 34 (5th Cir.1974). *See also Beard v.*

---

8. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), this circuit adopted as precedent the decisions of the former Fifth Circuit.

9. The lack of federal question jurisdiction under 28 U.S.C. § 1331 is, of course, conceptually indistinguishable from lack of subject matter jurisdiction under Rule 12(b)(1).

10. To make that determination the district court must provide the plaintiff with an opportunity to discover facts necessary to establish the court's competency to entertain the merits. *Williamson,* 645 F.2d at 414; *Eaton,* 692 F.2d at 729–30.

*Stephens,* 372 F.2d 685, 689 (5th Cir.1967). Moreover, Fed.R.Civ.P. 8(f) requires that *all* pleadings must be construed so as to do "substantial justice" to the parties. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Cameron v. Fogarty,* 705 F.2d 676, 678 (2d Cir.1983).

## II

We are unable to say that Mr. Simanonok's complaint is so completely devoid of merit that it cannot meet the generous pleading standards heretofore established by this court.[11] To be sure, Simanonok's complaint, like the complaint in *Dioguardi v. Durning,* 139 F.2d 774 (2d Cir.1944), is an inelegant, "home drawn," document. It makes a great many allegations against the federal defendants and attempts to base those allegations on a generous reading of several constitutional provisions. He is not always successful. Count VI, ¶ 26 of the complaint, for example, argues that the Former Spouse Protection Act violates the Constitution's grant of power to Congress to "provide for the common defense and general welfare of the United States." In Count II, ¶ 21, Simanonok alleges that the defendants violated the Thirteenth Amendment to the Constitution which prohibits slavery. Standing alone, these allegations would probably not survive a motion to dismiss under Rule 12(b)(1). We need not find merit in each and every one of the allegations, however, if the complaint, when read as a whole, establishes federal subject matter jurisdiction. Despite its shortcomings the complaint, in Count I, succeeds in clearly and unequivocally alleging a violation of Simanonok's due process rights. Because it is beyond peradventure that Government cannot take a portion of an individual's pay, pay to which he is statutorily entitled, and give it to another without at least complying with the requirements of due process, our task on appeal is simply to determine whether there is any merit whatsoever to these due process allegations.

The Former Spouse Protection Act requires the Government to make direct payments to a former spouse of a member of the military out of the retirement pay of that member "upon effective service" of a court order providing for payment from the retired pay in satisfaction of a divorce property settlement. 10 U.S.C. § 1408(d).[12] The court order must be "final," must be issued by a court of competent jurisdiction, in accordance with the laws of the jurisdiction of that court. 10 U.S.C. § 1408(a). Service of the court order is deemed to be effective if a designated agent of the Secretary of Defense is served, in person or by mail; if the court order is "regular on its face"; and if the court order properly identifies the military retiree. 10 U.S.C. § 1408(b)(1). A court order is "regular on its face" if it is issued by a court of competent jurisdiction, is legal in form, and includes nothing that indicates it is issued without authority of law. 10 U.S.C. § 1408(b)(2). A former spouse triggers the Act simply by submitting a facially-valid court order. The affected retiree is sent written notice of the receipt of the court order, but is given no other role in the process by the Act itself. 10 U.S.C. § 1408(g).

Paragraph (b) of the Act authorizes the Government to prescribe regulations for the administration of the Act. 10 U.S.C. § 1408(h). The regulations provide that the notified retiree may defeat the direct payment procedures by establishing that the court order is defective, inconsistent

---

11. After the district court's dismissal of his complaint, Mr. Simanonok moved to amend the complaint. This request was denied. The denial is challenged in this appeal. Because we hold that the original complaint should not have been dismissed, we do not consider whether the failure to permit amendment of the complaint was error.

12. The Act draws a distinction between "direct payments" and "garnishment." *See* 10 U.S.C. § 1408(d)(5). This distinction is purely semantical. Garnishment is a proceeding whereby property owed to one individual is applied to payment of that individual's debt to another. Black's *Law Dictionary* at 612 (5th ed.1979). The direct payment procedure in this case would seem to fit that definition.

with another existing court order, or that legal action has commenced to contest the court order. 32 C.F.R. § 63.6(f)(3).

The statutory authority for these regulations is unclear. The statute, as we have indicated, provides only that the affected member of the military be notified. Even more unclear is how the Act is actually being applied against retired servicemen. Simanonok was advised that the only way he could defeat the proposed direct payment was by showing the existence of a conflicting court order. Rec. at 133. Despite the regulations adopted by the Department of Defense the federal defendants, in their brief, continue to insist that Simanonok could have prevented direct payments only by showing that the court order submitted by his former spouse had been amended, superceded, or set aside. Def.Br. at 13.

More importantly, it is not clear that the Act and its accompanying regulations provide individuals in Simanonok's position with all the process due them. *See generally Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Supreme Court has repeatedly emphasized that constitutional requirements of due process apply to garnishment procedures whenever government acts jointly with a creditor in securing disputed property. *See Lugar v. Edmondson Oil,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *North Georgia Finishing v. Di-Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The Government responds that these cases all involved state prejudgment garnishment statutes and that the Former Spouse Protection Act is merely the federal enforcement mechanism for a valid, existing, state court judgment. But the question of whether the Act operates in a fashion similar to the prejudgment garnishment statutes struck down by the Supreme Court depends on the extent to which state court judgments are enforceable by federal authorities. The Full Faith and Credit Clause of the Constitution, Art. IV, § 1 applies directly only to the states, but 28 U.S.C. § 1738 embodies a statutory analogue to the constitutional provision for federal courts. Recently, we reiterated that full faith and credit will not be given a judgment "if the rendering court did not have jurisdiction over the parties and the subject matter," or if the judgment is rendered in violation of due process. *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1020, 1027 (5th Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983).[13]

*Fehlhaber* makes it clear that a divorce decree may be collaterally attacked in federal court. The issue here is complicated, however, by the fact that Major Simanonok has, perhaps too hastily, represented to this court that he does not contest the validity of his California divorce. It is further complicated by the fact that Simanonok appears to have voluntarily submitted to the jurisdiction of the California courts. The record on appeal is devoid of any information regarding the California decree apart from the fact that it was entered and that it divided the Simanonoks' property in a particular way. The record is also devoid of information regarding the circumstances of Major Simanononk's submission to the jurisdiction of the California courts. We note that the Act, which made direct payment out of Simanonok's retirement pay possible, was not enacted until long after

---

**13.** In *Underwriters National Assurance v. North Carolina Life & Accident,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982), the Supreme Court observed that "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." 455 U.S. at 704, 102 S.Ct. at 1366. In *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court stated that federal courts must give preclusive effect to state court judgments provided the applicable requirements of due process are met. "A state may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other State and federal courts are not required to accord full faith and credit to such a judgment." 456 U.S. at 482, 102 S.Ct. at 1898.

he had waived his jurisdictional defenses. Significantly, the Act itself prohibits the Government from honoring a court order unless the court has jurisdiction over the retiree by residence, domicile, or consent, for reasons other than military assignment. 10 U.S.C. § 1408(c)(4). At the risk of belaboring the point, we simply do not know enough about California's assumption of jurisdiction over Major Simanononk to say that his constitutional rights were not violated.

The Government contends that this case is controlled by *United States v. Morton*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). We disagree. In Morton the Supreme Court was called upon to decide whether federal officials were immune from damage claims under the statute for enforcement of an unlawfully issued writ of garnishment made pursuant to 42 U.S.C. § 659, a statute similar to the Former Spouse Protection Act. The Court concluded that federal officials were immune from damage claims and observed that the statute prohibited inquiry into the personal jurisdiction of the court issuing the writ of garnishment. We agree that Morton strongly suggests that 10 U.S.C. § 1408 ought not to be read as permitting suits for damages. That part of Simanonok's complaint that requests millions of dollars in damages is, therefore, not worthy of serious consideration. Simanonok's claims for injunctive relief, however, raise entirely different issues.

In *Morton* the Court noted that no question had been raised "concerning the sufficiency of the notice and opportunity to contest the garnishment that respondent received prior to the execution of the writs and that, in particular, no question had been raised "as to whether respondent was afforded an adequate opportunity to contest the jurisdiction of the court issuing the writ in the jurisdiction where the writ was enforced." *Id.* 104 S.Ct. at 2773, n. 5 (citations omitted). The court resolved the narrow, well-defined issue of federal liability, but did not address any procedural deficiencies in the statute. More importantly, while the statutes involved in Morton and

in this case are unquestionably similar, there is one significant difference. The regulations implementing 42 U.S.C. § 659, unlike those implementing 10 U.S.C. § 1408, provide that the payment of money shall be suspended if the individual whose pay has been garnished challenges the validity of either the garnishment procedures *or* the underlying court order. 5 C.F.R. § 581.305(a)(6). Major Simanonok was given no such opportunity.

We do not underestimate the implications of our decision, but given the conflicting versions of exactly what procedural rights a retiree is afforded under the Act and on the sketchy record before us, we are unable to say definitely that a violation of due process has not occurred.

Major Simanonok must be given an opportunity to clarify and support his objections to the Former Spouse Protection Act. We therefore REVERSE the district court's dismissal of the complaint and REMAND for further proceedings not inconsistent with this opinion.