**Joseph E. SIMANONOK,
Plaintiff–Appellant,**

v.

**Germaine B. SIMANONOK, Casper Weinberger, Individually and in capacity as Secretary of the Department of Defense, Wanda Davis and Alice K. Smith, Individually and in their capacities as Agents for the Department of Defense and/or the United States Air Force, Defendants–Appellees.**

**No. 89–1626.**

United States Court of Appeals,
Federal Circuit.

Nov. 8, 1990.

948

Joseph E. Simanonok, Major, USAF, Ret., Dover, N.H., pro se.

Douglas E. Wade, Major, USAF, Trial Atty., General Litigation Div., Office of The Judge Advocate General, of Washington, D.C., submitted for defendants-appellees. With him on the brief was Stuart E. Schiffer, Acting Asst. Atty. Gen. Jeanne L. Coleman, Tampa, Fla., for defendant-appellee, Germaine B. Simanonok.

Before RICH, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MILLS, District Judge.*

RICHARD MILLS, District Judge.

Appellant—who likes to refer to himself as "Fugitive Slave Appellant Simanonok," but whom we shall call simply Simanonok—has asked that we reverse the district court's granting of appellees' motions for summary judgment.

We hold, however, that the district court lacked jurisdiction over that portion of this lawsuit which would afford this court appellate jurisdiction, and accordingly we cannot reach the merits.

Because we do not reach the merits, we will likewise not exhaustively summarize the facts of this case, but instead will provide only enough to support our conclusions and establish the context. For a more complete rendition of the factual backdrop, see *Simanonok v. Simanonok*, 787 F.2d 1517 (11th Cir.1986) (a previous appeal of this case to our sister circuit, about which there will be more later).

The genesis of this case occurred in California on May 1, 1972, when Simanonok divorced his wife of 24 years. At that time (as at present), Simanonok was receiving retirement pay from his 20–year stint in the armed forces (he retired from the United States Air Force in 1969 with the rank of Major). The California divorce decree determined that Simanonok's retirement pay was community property, and ordered him to pay 23/54ths of that pay (42.59%) to his former wife. In 1981, though, the Supreme Court invalidated divorce decrees such as the Simamonoks' to the extent those decrees provided that military retirement pay could be subject to a community property determination, by holding that the Supremacy Clause preempted any such state determinations of the allocation of federal retirement benefits. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

Congress responded quickly to the *McCarty* ruling, and in 1982 enacted the Former Spouse Protection Act, 10 U.S.C. § 1408 (FSPA), which allows state courts to consider military retirement pay "either as property solely of the [retiree] or as property of the [retiree] and his spouse in accordance with the law of the jurisdiction of such court."

* Richard Mills, District Judge, United States District Court for the Central District of Illinois, sitting by designation.

In her turn, Simanonok's former wife Germaine took quick action to regain the benefit of the California divorce decree, and in March 1983 she informed the Air Force of that decree and asked that it resume garnishing Simanonok's retirement pay of the decreed amount. The Air Force promptly determined that the divorce decree was regular on its face; it then contacted Simanonok, informed him of its determination, and inquired whether he could show that the decree had ever been amended, superceded, or set aside. Simanonok answered that the Air Force's questions violated his rights under federal statutes, and that the FSPA was unconstitutional. The Air Force was unmoved by these arguments, though, and forthwith began garnishing 23/54ths of Simanonok's monthly pay, thus providing his former wife with approximately $797.00 per month.

Simanonok filed this suit on December 27, 1983, in the Middle District of Florida. His complaint named as defendants his ex-wife Germaine, Casper Weinberger, both as an individual and in his official capacity as Secretary of Defense, and Wanda Davis and Alice Smith, the Department of Defense employees who apparently processed the monthly garnishment, in both their individual and official capacities. The suit seeks a ruling that Simanonok has been deprived of his constitutional rights to due process of law and equal protection of the laws in the garnishment proceedings, and asks for millions of dollars in compensatory and punitive damages, as well as declaratory and injunctive relief.

Simanonok had little success with his suit in the district court. On September 17, 1984, that court agreed with the Government's position and dismissed the suit pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for want of jurisdiction, holding that the suit was "essentially a challenge to the validity of his California divorce decree."

Simanonok appealed that ruling to the Eleventh Circuit and that court reversed, holding that it was "unable to say that Mr. Simanonok's complaint [was] so completely devoid of merit that it [could not] meet the generous pleading standards heretofore established by [that court]." *Simanonok,* 787 F.2d at 1521. The court remanded to provide to Simanonok "an opportunity to clarify and support his objections to the Former Spouse Protection Act," noting that "given the conflicting versions of exactly what procedural rights a retiree is afforded under the Act and on the sketchy record before [it], [it was] unable to say definitely that a violation of due process has not occurred." *Id.* at 1523.

On remand, Simanonok filed an amended complaint, and later a second amended complaint, and in due course the district court considered and granted defendants' motion to dismiss or in the alternative for summary judgment. In its order entered July 29, 1988, the district court held that it had jurisdiction over all aspects of Simanonok's suit (despite the federal defendants' assertions to the contrary), but that sovereign immunity barred the suit against the federal defendants in their official capacities. The district court also held that Simanonok had no legitimate claim of entitlement to the portion of his retirement pay awarded to his ex-wife by their divorce decree, and so was not deprived of any property interest through the workings of the FSPA; alternatively, the district court held that in any event Simanonok had been provided all the procedure due him under the circumstances. The district court also held that the FSPA did not deny to Simanonok equal protection of the laws, and found Simanonok's argument that the California divorce court lacked the jurisdiction to affect his military retirement pay to be unfounded and untimely. Finally, the lower court found Simanonok's other challenges to the FSPA—for instance, that it violates the Universal Declaration of Human Rights, the American Convention on Human Rights, the Thirteenth Amendment, the Eleventh Amendment, and a host of other statutory, constitutional and administrative provisions—to be so lacking in merit as to warrant no serious consideration. The district court also renewed its decision to not enter a default judgment against Germaine Simanonok.

Simanonok once again appealed to the Eleventh Circuit, but that court, upon the Government's motion, transferred the appeal to this court, because "[t]he district court's jurisdiction was based at least in part on 28 U.S.C. § 1346(a)(2)." *See* 28 U.S.C. § 1295(a)(2).

And so this case arrived at our doorstep. Simanonok, of course, wants us to reverse the district court's "incredible post-remand order," arguing that "[t]he demeanor and output of the District Court have been very biased and prejudicial to Fugitive Slave Appellant...." The Government asks that we remand the portion of this suit leveled against the federal defendants in their official capacities, with an order that the district court transfer the case to the United States Claims Court, arguing that the district court lacked jurisdiction over that portion of the suit once the accrued amount of garnished pension topped $10,000, by virtue of the Tucker Act, 28 U.S.C. § 1346(a)(2). Simanonok disputes this, claiming that the district court appropriately exercised jurisdiction over his *Bivens* action, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

None of the parties has addressed this court's jurisdiction, but we do so anyway, as we are beholden to do.

We note at the outset that Simanonok misconstrues the Government's jurisdictional argument. There is no question as to whether the district court had jurisdiction over those portions of the complaint seeking relief against the federal defendants in their individual capacities as a *Bivens* action (it is less clear what possible grounds Simanonok has to haul his ex-wife into federal court merely for utilizing a duly-enacted federal statute, *see, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Winterland Concessions Co. v. Trela,* 735 F.2d 257, 262 (7th Cir.1984); *Wagner v. Metropolitan Nashville Airport Authority,* 772 F.2d 227, 230 (6th Cir.1985), but we pass no judgment on this question now). As for Simanonok's claims against these federal defendants in their official capacities, however, it is well-established that no *Bivens* relief is available under circumstances such as these, because the United States has not waived its sovereign immunity for such an action, *Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); instead, relief against the United States can only proceed based upon some express waiver of sovereign immunity.

Simanonok's claims against the federal defendants in their official capacities, which are in effect suits brought against the United States itself, *Amoco Production Co. v. Hodel,* 815 F.2d 352, 359 (5th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988), must proceed in the forum and manner allowed by the sovereign for that purpose. Here the forum is prescribed by 28 U.S.C. § 1346(a)(2), which provides concurrent jurisdiction between the district courts and the Claims Court for "[a]ny [non-tax] civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department...." Conversely, any such action for a claim exceeding $10,000 is subject to the exclusive jurisdiction of the Claims Court. *See* 28 U.S.C. § 1491(a).

The question presented is whether the district court lost its jurisdiction to consider this suit once the amount in question exceeded $10,000. Although when originally filed this suit sought less than $10,000 in garnished retirement pay, at some point the claim exceeded $10,000, because it has increased by $797.00 with each garnishment.

For this court the question is settled—district courts lose their Little Tucker Act jurisdiction once the amount claimed accrues to more than $10,000, even though jurisdiction was previously proper in the district court. As this court has recently stated, "the amount of a claim against the United States for back pay is the total amount of back pay the plaintiff stands ultimately to recover in the suit and is not the amount of back pay accrued at the time

the claim is filed." *Smith v. Orr*, 855 F.2d 1544, 1553 (Fed.Cir.1988) (following *Chabal v. Reagan*, 822 F.2d 349 (3d Cir.1987); *Shaw v. Gwatney*, 795 F.2d 1351 (8th Cir. 1986), and *Goble v. Marsh*, 684 F.2d 12 (D.C.Cir.1982)). Nor do we think that *Keller v. Merit Systems Protection Board*, 679 F.2d 220, 222 n. 4 (11th Cir.1982), which was cited by the court below, compels a different view. In *Keller*, the court found that at the time the complaint was filed the amount claimed exceeded $10,000, and therefore Claims Court jurisdiction was exclusive from the outset. Similarly, the *Keller* court cited *Carter v. Seamans*, 411 F.2d 767, 770–71 & n. 4 (5th Cir.1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970), in support of its broad statement that the moment of filing is the jurisdictionally relevant time, but in *Carter* as in *Keller* that dictum was not integral to the issue raised, and likewise the issue raised was not the same as that presented here.

In short, we hold that the district court had no jurisdiction over the claims against the federal defendants in their official capacities (i.e. against the United States), since those claims sought a recovery in excess of $10,000 and so were cognizable only in the Claims Court (if cognizable anywhere).

This ruling leads us to the question of our own jurisdiction—because the district court lacked jurisdiction over the United States claims, we obviously lack appellate jurisdiction over those claims as well. *Guercio v. Brody*, 884 F.2d 1372 (Fed.Cir. 1989). But what of the remaining claims ruled upon by the district court? As we have noted, we do not here question whether the district court had jurisdiction over the three federal defendants in their individual capacities or over Germaine Simanonok, and so the district court's ruling with respect to those claims is ripe for appellate review. Because we have held that the district court lacked Little Tucker Act jurisdiction, though, we must bow out of considering on the merits the remainder of this case for want of Federal Circuit jurisdiction.

Our jurisdictional marching orders are found at 28 U.S.C. § 1295, subsection (a)(2) of which provides us with "exclusive jurisdiction—of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title [i.e. the Little Tucker Act]." The only part of this case in the district court which was originally under the Little Tucker Act was not under that Act when the district court rendered its final decision, and so neither the whole nor any part of the district court's jurisdiction was based upon the Little Tucker Act at the time the final decision was rendered. That being so, appellate jurisdiction lies elsewhere, not here. *See Chabal v. Reagan*, 822 F.2d 349, 355 (3d Cir.1987) (collecting cases).

■ An alternative reason exists to find no appellate jurisdiction in this court. Even assuming that the $10,000 Little Tucker Act limit does not decide this issue, Simanonok's claims against the United States are so frivolous as to have not supplied any Little Tucker Act jurisdiction in the first place. The foundation of Simanonok's suit is the asserted unconstitutionality of the FSPA, and his claims against all defendants seek recovery for their actions in implementing and carrying out the FSPA. Yet the FSPA itself clearly deprives retirees such as Simanonok of any recovery from the United States or its agents merely for carrying out the Act—i.e. the FSPA retracts any waiver of sovereign immunity which might be found elsewhere in the United States Code. Specifically, 10 U.S.C. § 1408(f)(1) provides:

> The United States and any officer or employee of the United States shall not be liable with respect to any payment made from retired or retainer pay to any member, spouse, or former spouse pursuant to a court order that is regular on its face if such payment is made in accordance with this section and the regulations prescribed pursuant to [this Act].

Although Simanonok makes some broad claims that the FSPA and its regulations were not followed in his case, the record does not bear this out, and in the end this

suit is at most a dispute over whether the FSPA and the regulations enacted under it are constitutional; as such, § 1408(f)(1) expressly retains sovereign immunity for any claims arising out of compliance with the Act and its regulations. *See United States v. Morton*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

▮ Indeed, when this case was first appealed to the Eleventh Circuit that court so held, when it stated that "[w]e agree that *Morton* strongly suggests that 10 U.S.C. § 1408 ought not to be read as permitting suits for damages. That part of Simanonok's complaint that requests millions of dollars in damages is, therefore, not worthy of serious consideration. Simanonok's claims for injunctive relief, however, raise entirely different issues." *Simanonok*, 787 F.2d at 1523. Inasmuch as the case was then before the Eleventh Circuit on a Rule 12(b)(1) motion for dismissal for want of jurisdiction, it is clear that that court held the claims for monetary damages against the United States to be so frivolous as to not provide any jurisdictional basis.

▮ We agree that the claims for monetary damages are frivolous, and therefore the district court had no Little Tucker Act jurisdiction by virtue of those monetary claims. *See Banks v. Garrett*, 901 F.2d 1084, 1086–88 and n. 2 (Fed.Cir.1990). Moreover, the injunctive claims which the Eleventh Circuit found extant are not cognizable in a Little Tucker Act or Tucker Act case, absent a concurrent colorable claim for monetary recovery. *Richardson v. Morris*, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (per curiam); *Lee v. Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) (per curiam).

We therefore hold that the district court lacked jurisdiction to enter any order falling under 28 U.S.C. § 1346(a)(2), and consequently this court lacks jurisdiction over the remaining issues on appeal. *Guercio v. Brody*, 884 F.2d 1372 (Fed.Cir.1989); *Banks*, 901 F.2d at 1088 n. 2.

We are cognizant of the Supreme Court's admonition that we are obliged to "adher[e] strictly to principles of law of the case" in order to avoid a "perpetual game of jurisdictional ping pong...." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818–19, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988). Nevertheless, we must respectfully disagree with the Eleventh Circuit's view that the district court's jurisdiction in this case was based at least in part on the Little Tucker Act. For one thing, our reading of the Eleventh Circuit's *Simanonok* opinion is that that court has already held that Simanonok's claims against the United States officials under the Little Tucker Act are frivolous, and therefore our ruling that the district court had no Little Tucker Act jurisdiction is in full comport with the doctrine of the law of the case. Significantly, the Eleventh Circuit's order of transfer to this Court did not discuss its previous ruling, nor provide the reasons for finding as it did.

Secondly, the Eleventh Circuit has never made any express ruling on the district court's denial of the Government's motion to dismiss based upon the accrual of over $10,000 in the amount claimed. Although the district court cited an Eleventh Circuit case in support of its ruling, we have found that case distinguishable, and know of no other case which would cause the Eleventh Circuit to depart from the majority view— applied by us here—that a district court will lose Little Tucker Act jurisdiction if and when the amount claimed climbs to over $10,000.

Indeed, this whole jurisdictional dispute has been orchestrated by the Government, which has made—and refrained from making—arguments as the mood strikes it. In the district court, the Government unsuccessfully argued that that court lost jurisdiction when the amount claimed exceeded $10,000. On appeal to the Eleventh Circuit, though, the Government argued that the district court had indeed had Little Tucker Act jurisdiction, and so the appeal should lie with us. In fact, in support of its motion to transfer, the Government cited the district court's order finding Little Tucker Act jurisdiction. The Eleventh Circuit accepted this argument and transferred the case to this court, but once here the

Government doubled back and argued again that, in fact, there was no Little Tucker Act jurisdiction in the district court.

██ Under these conditions, there is little wonder that the jurisdictional status of this case has been unsettled. This is not a case where two appellate courts were given opportunity to consider a well-briefed question of appellate jurisdiction and reached opposite conclusions (indeed, it is significant that Simanonok is prosecuting this case *pro se*, and appears not to have understood the Little Tucker Act jurisdictional issue nor its implications). Hence, although we now retransfer this case to the Eleventh Circuit, we do not feel we have run afoul of the Supreme Court's admonishment in *Christianson* respecting adherence to the law of the case. Rather, we feel that this case is within the category which the Court recognized "in which the transferee court considers the transfer 'clearly erroneous.' " As in *Christianson*, once we have decided that we are without jurisdiction we are obliged to either dismiss the case or "transfer it to a court of appeals that has jurisdiction. 28 U.S.C. § 1631." *Id.* 486 U.S. at 817–19, 108 S.Ct. at 2178.

Accordingly, IT IS ORDERED that this appeal is RETRANSFERRED to the United States Court of Appeals for the Eleventh Circuit pursuant to 28 U.S.C. § 1631.

FRIEDMAN, Senior Circuit Judge, dissenting.

I would accept the transfer order and decide the merits of this appeal.

The controlling decision on intercircuit transfers between this court and the other circuits is *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). There, this court by unpublished order transferred, for lack of jurisdiction, an appeal to the Court of Appeals for the Seventh Circuit. The latter court, *sua sponte*, in a lengthy opinion, held that it had no jurisdiction over the appeal and that the contrary decision of this court was "clearly wrong," and retransferred the appeal back to this court. *Christianson v. Colt Indus. Operating*

*Corp.*, 798 F.2d 1051, 1056–57, 1062 (7th Cir.1986). This court then held that the Seventh Circuit itself was "clearly wrong" in concluding that this court, and not it, had jurisdiction of the appeal, but decided the merits. *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1551 n. 7, 1559–60 (Fed.Cir.1987).

The Supreme Court reversed. It held that the Seventh Circuit, not this court, had jurisdiction over the appeal, and that this court's initial transfer was the law of the case. 486 U.S. at 817, 108 S.Ct. at 2178. It stated that retransfer "should necessarily be exceptional," that "[u]nder law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end," and that in transfer cases, the courts of appeal should "adher[e] strictly to principles of law of the case." 486 U.S. at 819, 108 S.Ct. at 2179. The Court further stated that it was "irrelevant" that "the Federal Circuit did not explicate its rationale ... for the law of the case turns on whether a court previously 'decide[d] upon a rule of law'—which the Federal Circuit necessarily did—not on whether, or how well, it explained the decision." *Id.* at 817, 108 S.Ct. at 2178.

Since *Christianson*, this court routinely has accepted transfers of appeals by other circuits without inquiring into the correctness of the transfer order. In *Xeta, Inc. v. Atex, Inc.*, 852 F.2d 1280, 1281 (Fed.Cir. 1988), we accepted a patent case that the First Circuit had transferred to us because:

> The matter was settled in *Christianson v. Colt Industries Operating Corp.*, (486 U.S. 800, 108 S. Ct. 2166, 100 L.Ed.2d 811 (1988)), wherein the Court held that the jurisdictional decision of the transferor court is the law of the case. Jurisdiction is properly with the Federal Circuit.

In *Doko Farms v. United States*, 861 F.2d 255, 256 (Fed.Cir.1988), we described *Christianson* as having "held that the decision of a coordinate court on a jurisdictional issue must be followed as the law of the case." *See also Smith v. Orr*, 855 F.2d 1544, 1548 (Fed.Cir.1988), where we stated that in *Christianson* "the Supreme Court

held that a transferee court must apply law-of-the-case principles to a transfer decision of a coordinate court. The transferee court is bound by the transfer decision unless it determines that the transfer decision was ' "clearly erroneous and would work a manifest injustice." ' " (footnote omitted).

Although, as noted, *Christianson* recognized an exception for "exceptional circumstances," the only case in which this court directed retransfer involved not a transfer of an appeal from another circuit to this court, but a transfer of a case for trial from a district court to the United States Claims Court. In *Rodriguez v. United States,* 862 F.2d 1558 (Fed.Cir.1988), a district court had transferred a tort case to the Claims Court, the jurisdiction of which explicitly excluded any claim "sounding in tort." 28 U.S.C. § 1491(a)(1). The Claims Court refused to retransfer the case to the district court. We reversed, holding that that decision "was clearly erroneous because the Claims Court lacks jurisdiction over claims sounding only in tort." 862 F.2d at 1560.

The present case is a far cry from *Rodriguez.* Here, unlike that case, as the court's opinion in this case shows, the jurisdictional issue is far from clear. I do not think the Eleventh Circuit's transfer order involves the kind of exceptional circumstances that *Christianson* recognized might warrant a departure from the law of the case for transfer orders.

Indeed, upon receiving the case back, the Eleventh Circuit might disagree with our analysis of the jurisdictional issue and, concluding that our retransfer decision was clearly erroneous, again transfer the appeal to this court. The result would be the very "game of jurisdictional ping pong," 486 U.S. at 818, 108 S.Ct. at 2178–79, that the *Christianson* rule was designed to avoid.