Roland L. GOAD, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–72C.

United States Claims Court.

Dec. 23, 1991.

Roland L. Goad, pro se.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### INTRODUCTION

This military pay case is before the court on the Plaintiff's Motion for Summary Judgment and the Defendant's Motion To Dismiss. Both parties have filed their respective oppositions to the foregoing motions. The issues have been fully briefed and, for the following reasons, the defendant's motion to dismiss is granted and the plaintiff's motion for summary judgment is denied as moot.

### FACTS

Roland Lee Goad, plaintiff, is a member of the United States Air Force on the retired list. Mr. Goad remains entitled to earn pay based on his continuing military status and his availability for immediate recall if the Secretary of the Air Force deems it to be necessary.

On September 19, 1980, after 30 years of marriage, Roland Goad and his wife, Mary Beth, were divorced in the 272nd District Court of Brazos County, Texas. Pursuant to the divorce decree, Mrs. Goad was awarded twelve twenty-sevenths (12/27) of the plaintiff's "Air Force retirement benefits." [1] Mr. Goad refused to comply with the payment as ordered by the divorce decree, and, on January 7, 1985, the same court which had issued the divorce decree held Mr. Goad in contempt. That court also found that Mr. Goad was in arrears to Mrs. Goad in the total sum of $30,099.42. [2]

In 1982, the United States Congress passed the Uniformed Services Former Spouses' Protection Act (USFSPA). [3] The essential purpose of the USFSPA was to remedy the prior Supreme Court decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (holding that military retirement pay was not divisible community property because the grant to a spouse contravened Congress's intention that such pay actually reach the beneficiary). The USFSPA unequivocally alters the holding in *McCarty*. For example, the USFSPA allows the federal government to

---

1. The language of the divorce decree states that "IT IS FURTHER ORDERED, that ROLAND LEE GOAD shall, upon receipt of all United States Air Force Retirement benefits, immediately deliver twelve/twenty-sevenths (12/27) of said retirement benefit, by United States mail to MARY BETH GOAD at her current place of residence."

2. Plaintiff subsequently filed a petition for a writ of habeas corpus in the Texas Supreme Court, seeking relief from the district court order issued on January 7, 1985. The Texas Supreme Court denied his petition.

3. 10 U.S.C. § 1408 (1988). Pertinent sections of this statute are as follows:
   10 U.S.C. § 1408(a)(1)(A): (a) In this section: (1) "Court" means—(A) any court of competent jurisdiction of any State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Northern Mariana Islands, and the Trust Territory of the Pacific Islands; (B) any court of the United States (as defined in section 451 of title 28) having competent jurisdiction; and (C) any court of competent jurisdiction of a foreign country with which the United States has an agreement requiring the United States to honor any court order of such country.

10 U.S.C. § 1408(a)(2): (2) "Court order" means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree ... which—(C) in the case of a division of property, specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of a member to the spouse or former spouse of that member.

10 U.S.C. § 1408(c)(1): Subject to the limitations of this section, the court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(g): A person receiving effective service of a court order under this section shall, as soon as possible, but not later than 30 days after the date on which effective service is made, send a written notice of such court order (together with a copy of such order) to the member affected by the court order at his last known address.

honor a state court order which grants a segment of military retirement benefits to former spouses of military employees. The statute also allows, under particular circumstances, the withholding and direct transfer of the court-ordered amount to the former spouse. 10 U.S.C. § 1408(d).

Pursuant to the USFSPA, on June 24, 1985, Mrs. Goad applied to the Air Force Accounting and Finance Center (AFAFC) to receive directly a portion of Mr. Goad's retirement pay.[4] On June 28, 1985, the AFAFC forwarded to the plaintiff a notice that it had received Mrs. Goad's application for benefits under the USFSPA. The letter sent to the plaintiff stated that the United States Air Force was required by federal law to honor Mrs. Goad's request. However, the letter also advised the plaintiff that, if there existed any "conflicting court orders" which may cast doubt upon the divorce decree, these orders should be sent to the AFAFC within 30 days. If such orders were not sent within this time frame, the AFAFC stated that the requested fraction (or percentage) of benefits would be deducted from Mr. Goad's August 1985 retired pay.[5] Although the plaintiff forwarded two objection letters to the AFAFC, it found no merit in them and subsequently began withholding twelve twenty-sevenths (12/27) of plaintiff's retirement pay for Mrs. Goad.

In December of 1985, Mr. Goad asked the AFAFC to reconsider its decision. The AFAFC again denied Mr. Goad's request.

Following this rejection, Mr. Goad filed an action in the United States District Court for the Southern District of Texas.[6] In that action, he challenged the constitutionality of the USFSPA and the actions of the AFAFC. The court held that plaintiff's "action for monetary relief must be dismissed because this Court lacks subject matter jurisdiction under the Tucker Act." *Id.* at 1076. The court reasoned that the Tucker Act confers concurrent jurisdiction to both the United States District Courts and the United States Claims Court for claims not involving torts against the United States for damages not in excess of $10,000. 28 U.S.C. § 1346(a)(2) (1982). However, claims in excess of $10,000 are within the exclusive jurisdiction of the United States Claims Court. Since the district court found Mrs. Goad's claim to exceed $10,000, the court held that it lacked the requisite jurisdiction to entertain the claim.

Nevertheless, the district court did hold that it possessed the requisite subject matter jurisdiction to consider the plaintiff's claim for declaratory relief—specifically that the AFAFC payments directly to Mrs. Goad violated federal statutes, the United States Constitution, and the State of Texas Constitution.[7] The district court held that each of the asserted claims lacked merit and, therefore, dismissed the suit. In addition, because the court found that each claim lacked merit, the court declined to transfer the suit to the United States Claims Court pursuant to 28 U.S.C. § 1631,

---

4. Mrs. Goad's application included a copy of the divorce decree, the contempt order, and the denial of habeas corpus relief.

5. Mrs. Goad was not seeking any retroactive benefits.

6. *Goad v. United States*, 661 F.Supp. 1073 (S.D.Tex.), *aff'd in part, vacated in part* 837 F.2d 1096 (Fed.Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1079, 99 L.Ed.2d 238 (1988). The undisputable facts at bar, substantially mirror the facts in the district court litigation.

7. Plaintiff's complaint in the district court asserted the following claims:
    1. The AFAFC's direct payments to Mrs. Goad violated the USFSPA.

2. The AFAFC's direct payments to Mrs. Goad are prohibited by the Texas Constitution.
    3. The AFAFC's direct payments to Mrs. Goad violated the Consumer Protection Act.
    4. The AFAFC's direct payments to Mrs. Goad violated 37 U.S.C. § 701(e) (1988).
    5. The USFSPA is unconstitutional because it deprives the plaintiff of due process and equal protection.
    6. The Goads' divorce decree was invalidated by the *McCarty* decision and cannot be resuscitated by the USFSPA.
    7. The USFSPA is unconstitutional because it impermissibly delegates legislative power to the states.
*Goad*, 661 F.Supp. at 1077.

inasmuch as it would not be in the "interest of justice." *Goad,* 661 F.Supp. at 1077.[8]

Mr. Goad appealed the judgment of the United States District Court for the Southern District of Texas to the United States Court of Appeals for the Federal Circuit.[9] The Federal Circuit affirmed the segments of the district court's holding dismissing the suit for lack of jurisdiction, refusing to transfer the action to the United States Claims Court because transfer would not be in the interests of justice, and awarding sanctions pursuant to Fed.R.Civ.P. 11. However, the Federal Circuit reversed the district court's holding that it possessed the requisite jurisdiction to hear Mr. Goad's suit for declaratory relief. As a result, the Federal Circuit vacated the grant of summary judgment, and remanded to the district court with instructions to dismiss the complaint for lack of jurisdiction.

On January 22, 1990, Mr. Goad filed a complaint, *pro se,* in this court, seeking to obtain a judgment on those amounts of his salary that were withheld and forwarded to Mrs. Goad since September 1, 1985. In his complaint, plaintiff asserts the following bases for his claims:

1. The divorce decree does not qualify as a court order under the USFSPA;

2. Plaintiff's pay is exempt from executing garnishment, levy, or seizure in satisfaction of a community property claim;

3. The fact that Congress declared that the USFSPA would apply retroactively and thereby annul a prior United States Supreme Court decision contra-

venes the principles of separation of powers;

4. Congress has acted in excess of its authority by delegating to state courts the authority to determine whether or not to apportion retired pay as community property;

5. The direct pay procedures of the United States Air Force has deprived the plaintiff of his pay without due process of law; and

6. The USFSPA which allows direct payments from the AFAFC without having to resort to periodic state garnishment procedures violates the equal protection of the law as mandated by the Fifth Amendment to the United States Constitution.

On March 23, 1990, plaintiff filed a motion for summary judgment with supporting affidavit pursuant to RUSCC 56(a). On May 21, 1990, the defendant filed a motion to dismiss for failure to state a claim pursuant to RUSCC 12(b)(4) and a response to plaintiff's motion for summary judgment. On June 5, 1990, plaintiff filed a reply to the defendant's motion to dismiss,[10] and on June 28, 1990, the defendant filed a reply brief. It is the motion for summary judgment and motion to dismiss which the following contentions and discussion will address.

## CONTENTIONS OF THE PARTIES

### 1. *Plaintiff*

Plaintiff, in his motion for summary judgment, is seeking two legal conclusions. First, he is requesting that this court grant

---

**8.** Pursuant to Fed.R.Civ.P. 11, the district court also awarded sanctions against Mr. Goad. First, the court found that Mr. Goad's claims were not warranted by existing law, but rather that they were "patently frivolous." *Id.* at 1080–81. Second, the court found that there existed a "meanness of spirit" in Mr. Goad's action. *Id.* at 1081 ("Mr. Goad's persistent attempts to strip Mrs. Goad of the property granted to her by the divorce decree and to punish the AFAFC for honoring that decree can only be characterized as harassment."). As a result, the district court ordered sanctions in the amount of $4,748.40. *Id.*

**9.** *Goad v. United States,* 837 F.2d 1096 (Fed.Cir. 1987).

**10.** In his June 5, 1990 submission, the plaintiff also moved to "strike out and disregard the insufficient defenses of 'sovereign immunity' and 'res judicata' put forth by the defendant in its motion to dismiss; and to strike out and disregard those documents appended to Defendant's motion that are redundant or contain immaterial, impertinent, or scandalous matter." Defendant filed a response thereto on June 28, 1990, and plaintiff filed a reply on July 9, 1990.

an order quashing, dissolving, and recalling DD Form 2293 ("Request for Former Spouse Payments From Retired Pay") which is dated June 24, 1985. This is the form which Mrs. Mary Beth Goad submitted to determine if she was eligible for payments from her former spouse's retired pay. Secondly, the plaintiff is requesting that judgment be entered against the United States for all amounts of plaintiff's pay that have been withheld under the USFSPA since September 1, 1985, and for plaintiff's court costs and other relief to which this court believes the plaintiff is entitled.

In support of his summary judgment motion, plaintiff makes the following arguments. First, the plaintiff contends that regardless of the passage of the USFSPA, 37 U.S.C. § 701(c) remains valid and therefore still applies to community property claims. 37 U.S.C. § 701(c), known as the Anti–Assignment Statute, states that "[a]n enlisted member of the Army or Air Force may not assign his pay, and if he does so, the assignment is void." The United States Supreme Court addressed the statute in *McCarty*, 453 U.S. at 228–229 n. 22, 101 S.Ct. at 2738–2740 n. 22 ("[r]etired pay cannot be attached to satisfy a property settlement incident to the dissolution of marriage.... In addition, any Army enlisted man may not assign his pay. 37 U.S.C. § 701(c)."). Based on this authority, plaintiff argues that because he had not yet earned any of the prospective pay at the time of the divorce decree in 1980, it was not property in possession. As a result, plaintiff contends that strong public policy considerations exist which are in contravention of the assignment of a public servant's unearned income. Furthermore, the plaintiff argues that 37 U.S.C. § 701(c) has not been repealed, modified, or amended by Congress in a way which would contradict *McCarty*. Finally, plaintiff notes that even though the United States District Court for the Southern District of Texas found that the argument that direct payments to Mrs. Goad violated 37 U.S.C. § 701(c) was without merit, the United States Court of Appeals for the Federal Circuit vacated this portion of the holding because it found that the district court was

This court finds no justification for the plaintiff's arguments with respect to this motion and

without jurisdiction to entertain this declaratory relief claim.

Plaintiff's second contention is that disposable retired pay held by the United States Air Force remains exempt from execution, attachment, levy, service, or garnishment in satisfaction of a community property award. In support of his contention, plaintiff notes that the Consumer Credit Protection Act (CCPA), 15 U.S.C. §§ 1671–1677, limits the maximum amount of an individual's earnings subject to garnishment to 25% of disposable income. The plaintiff also notes that the effect of the 1974 Social Service Amendments to the CCPA was to bring the federal government under control of the individual state garnishment laws as if the federal government were a private employer within the state. Therefore, the plaintiff argues that under Texas law, garnishment is not available to a spouse seeking to enforce an order awarding the pay as community property in a divorce. In addition, plaintiff quotes the Texas Constitution which states that:

No current wages for personal services shall ever be subject to garnishment, except for the enforcement of court ordered child support payments.

Tex.Const., Art. XVI, § 28.

Plaintiff's third argument is that the Texas state court which issued the 1980 divorce decree did not possess the requisite jurisdiction over the plaintiff's disposable retired pay and, therefore, did not possess the authority to order the pay to be partitioned. Principally, the plaintiff argues that because the res (retired pay) which Mrs. Goad sought had never been located in Texas, but rather was in the possession of the United States Treasury, the Air Force was not amenable to process by the Texas state court. As a result, plaintiff contends that the Texas state court did not have personal jurisdiction in rem over the holder of the res. As support, plaintiff states that debt due from the United States cannot be treated as local assets subject to in rem jurisdiction because the United States in its sovereign capacity possesses no particular place of domicile.

thereby denies said motion to strike.

The fourth contention offered by the plaintiff is that military retired pay which is earned for services performed after the divorce has occurred does not constitute a part of the "estate of the parties" which is subject to apportionment. In addition, the plaintiff argues that no right to retired pay accrues to a military serviceman by virtue of past military service, but that the determining factor is his present status. In this instance, the plaintiff contends that his office is not property and the prospective pay is not personal property on an "account receivable" that can be part of a divorce apportionment.

Plaintiff's fifth argument is that the USFSPA violates the Due Process Clause of the Fifth Amendment of the United States Constitution because the USFSPA did not provide him with a proper forum to challenge the direct diversion of funds to his former spouse. Specifically, plaintiff points to the fact that Mrs. Goad's application was not accompanied by any legal process from a court directed to the United States Air Force, and the fact that the plaintiff was notified by the Air Force after Mrs. Goad's application had already been approved.

The sixth argument offered by the plaintiff is that the USFSPA violates equal protection under the United States Constitution by providing special privileges to former spouses of retired military members. In support of his argument, the plaintiff states that the USFSPA is a special law, the purpose of which is to allow former spouses of military members to receive court-ordered payments directly from the military without any periodic garnishment proceedings. This, the plaintiff contends, directly infringes upon the reserved powers of the states by assuming part of the police powers.

Plaintiff's seventh contention is that Congress has violated the principles of separation of powers and nondelegation of legislative powers by its adoption of 10 U.S.C. § 1408(c)(1), which provides that a court may treat disposable retired pay as property of both the military member and his spouse in accordance with the law of jurisdiction of that court.

The eighth and final argument offered by the plaintiff in support of his summary judgment motion is that the 1980 divorce decree issued by the Texas state court is not a "court order" as required by the USFSPA.

2. *Defendant*

On May 21, 1990, the defendant filed a motion to dismiss and a response to the plaintiff's motion for summary judgment. In support of its position, the defendant offers two essential arguments. First, the defendant contends that the United States is immune from liability for USFSPA payments pursuant to the divorce decree issued by the Texas state court which is "regular on its face." The defendant states that the Tucker Act (28 U.S.C. § 1491), which the plaintiff cites as his jurisdictional basis, does not create a right of recovery against the United States, but rather grants jurisdiction when the right exists. Furthermore, the defendant argues that the jurisdiction of the United States Claims Court to hear claims depends upon the extent to which the United States has waived its immunity. As a result, defendant contends that the plaintiff must establish, in addition to the Tucker Act, a statutory or regulatory provision which grants him the right to the payment of money in order to be awarded jurisdiction in this court. Therefore, defendant states that because immunity has not been waived to permit a claim which challenges USFSPA payments to a former spouse pursuant to a divorce decree which is "regular on its face," the plaintiff has not met his burden of proving jurisdiction.

The defendant's second and final argument is that the plaintiff's challenges to the USFSPA are frivolous. In support of its position, the defendant states that the United States Court of Appeals for the Federal Circuit sustained the District Court for the Southern District of Texas' judgment against the plaintiff issuing sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. This holding was based

upon a finding that the plaintiff's attacks on the USFSPA were frivolous and brought in a mean-spirited campaign of harassment designed to deprive Mrs. Goad of her right to the retired pay. As a result, the defendant argues that the district court's analysis of the plaintiff's claims demonstrates that they lack merit.

## DISCUSSION

### 1. *Plaintiff's Motion For Summary Judgment*

The plaintiff filed his motion for summary judgment on March 23, 1990. The disposition of a case on a motion for summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. RUSCC 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The process of summary judgment serves judicial economy and saves the expense and time of a full trial when it is deemed to be unnecessary. When the material facts are adequately developed, a full trial is useless. In this context, "useless" means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984), *citing U.S. Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 55 CCPA 1141, 157 USPQ 627 (1968). A material fact "is one which will make a difference in the result of a case." *Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). The function of the judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The plaintiff, as the moving party, therefore, has the burden of establishing that there are no genuine issues in

dispute and that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 321, 106 S.Ct. at 2551, *citing Catrett v. Johns–Manville Sales Corp.*, 244 U.S.App. D.C. 160, 163, 756 F.2d 181, 184 (1985). The defendant, as the party opposing the motion, then has the burden of providing sufficient evidence, not necessarily admissible at trial, to show that a genuine issue of material fact indeed exists. *Id.*, 477 U.S. at 324, 106 S.Ct. at 2553. Any evidence presented by the defendant "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

In this case, the plaintiff moved for summary judgment. The defendant filed a response opposing the plaintiff's foregoing motion but did not cross move for summary judgment. However, the defendant did file with its opposition a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RUSCC 12(b)(4).

Therefore, before the summary judgment motion is addressed in this case, this court must first consider the defendant's motion to dismiss. The reason for this procedure is that if this court grants the defendant's motion to dismiss, the motion for summary judgment will, of course, become moot and, therefore, need not be addressed.

### 2. *Defendant's Motion to Dismiss*

The purpose of RUSCC 12(b) is to promote the expeditious presentation of defenses and objections. The defendant, upon receipt of the complaint, and prior to filing a responsive pleading, has the option of presenting to the court in the form of a motion to dismiss any of the following four defenses stated in RUSCC 12(b):

(1) *How presented....* [T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; (4) failure to state a

claim upon which relief can be granted....

The defendant herein is moving pursuant to RUSCC 12(b)(4), in which case the court's inquiry is essentially limited to the content of the complaint.

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1973). Therefore, the court is limited to deciding the defendant's motion to dismiss within the context of the well-established principle that the allegations of fact outlined in the complaint be "accepted and construed in the light most favorable to plaintiff." *White Mountain Apache Tribe v. United States*, 8 Cl.Ct. 677, 681 (1985); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) ("[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). With these general guidelines regarding the Claims Court's procedure for reviewing a motion to dismiss pursuant to RUSCC 12(b)(4), and for the reasons expressed hereinafter, this court must find in favor of the defendant and dismiss the plaintiff's complaint.

■ "The United States, as sovereign, is immune from suit," unless "it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), *citing United States v. Thompson*, 98 U.S. 486, 489, 25 L.Ed. 194 (1878) ("The United States possess other attributes of sovereignty resting also upon the basis of universal consent and recognition. They cannot be sued without their consent."). An example of waiver of immunity is the Tucker Act, 28 U.S.C. § 1491 (1988), which confers jurisdiction upon the United States Claims Court:

... to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act, however, "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). "The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *Id.* As a result of this federal statute, Mr. Goad has the burden of showing that the United States has waived its sovereign immunity to permit a claim challenging the USFSPA payments to his former spouse, pursuant to a divorce decree, through the AFAFC. In other words, absent a contract, Mr. Goad must show a statutory or constitutional provision affording him the right to the payment of money by the United States in order for this court to grant him jurisdiction over his claim. Mr. Goad has failed to meet this strict burden. In fact, another federal statutory provision explicitly removes any waiver of sovereign immunity on behalf of the United States with respect to the direct payment of funds to a military spouse. According to the USFSPA:

The United States and any officer and employee of the United States *shall not be liable with respect to any payment made* from retired or retainer pay to any member, spouse, or former spouse pursuant to a court order that is regular on its

face if such payment is made in accordance with this section and the regulations prescribed pursuant to subsection (h).

10 U.S.C. § 1408(f)(1) (emphasis added). In view of the explicit foregoing provision, it is patently clear, therefore, that the United States has not waived its immunity to permit a claim challenging the USFSPA, as would be required by the Tucker Act.

■ If the divorce decree issued by the Texas state court in 1980 was not "regular on its face," then the provisions of 10 U.S.C. § 1408(f)(1) would not apply, and the United States would not have disclaimed its liability. The plaintiff vehemently argues in his motion for summary judgment that this particular divorce decree is not a "court order that is regular on its face" as required by the USFSPA. This court emphatically disagrees.

10 U.S.C. § 1408(a)(2) defines a court order as:

... a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, or a court ordered, ratified or approved property settlement incident to such previously issued decree), which

(A) is issued in accordance with the laws of the jurisdiction of that court;

(B) provides for—

\* \* \* \* \* \*

(iii) division of property (including a division of community property); and

(C) in the case of a division of property, specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of a member to the spouse or former spouse of that member.

Furthermore, 10 U.S.C. § 1408(b)(2) states that:

... a court order is regular on its face if the order—

(A) is issued by a court of competent jurisdiction;

(B) is legal in form; and

(C) included nothing on its face that provides reasonable notice that it is issued without authority of law.

The divorce decree at issue in this case unequivocally meets these criteria. With respect to the definition of court order outlined in 10 U.S.C. § 1408(a)(2), the decree involved is certainly a "final decree of divorce," the title of the document being "Decree of Divorce." In addition, the decree was issued "in accordance with the laws of the jurisdiction of that court"; more specifically, it was issued under Texas state law, and provided for a "division of property" within the contemplation of 10 U.S.C. § 1408(a)(2)(B)(iii). Finally, the decree expressly provides for the division of property in an amount "expressed in dollars or as a percentage of disposable retired or retainer pay." Even though the decree actually gives a fraction of twelve twenty-sevenths (12/27) "of the United States Air Force Retirement benefits," this fraction mathematically equates to 44.44%, and a fraction is the equivalent of a percentage figure.

With respect to the criteria concerning whether the court order is "regular on its face" pursuant to 10 U.S.C. § 1408(b)(2), the evidence is similarly poignant. The order was issued by a court of competent jurisdiction—specifically the District Court of Brazos County, Texas, 272nd Judicial District. In addition, the order is in traditional legal form. For example, it is titled "Decree of Divorce"; it was signed by the presiding judge and the court clerk, with the formal stamp appended thereto; and it has a filing date and case number. Finally, there is nothing on the document that would provide "reasonable notice that it [was] issued without authority of law." As noted previously, everything within the document suggests that it is legal in form and content according to Texas state law. Moreover, on the last page, the clerk of the court duly certifies it to be a "true and correct copy of the original."

It should also be noted that case law provides for a less stringent examination when considering whether an order is "regular on its face" versus the process for determining whether an order is substantively correct. As a general rule, the process of ascertaining whether such an order is regular on its face "demands no inquiry beyond the face of the document." *Millard v. United States*, 16 Cl.Ct. 485, 488 (1989), *aff'd*, 916 F.2d 1 (Fed.Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2012, 114 L.Ed.2d 99 (1991). Moreover, the Supreme Court, *citing In re Matthews*, 61 Comp. Gen. 229, 230–231 (1982), stated that:

> "The inquiry into whether an order is valid on its face is an examination of the procedural aspects of the legal process involved, not the substantive issues. Whether a process conforms or is regular 'on its face' means just that. Facial validity of a writ need not be determined 'upon the basis of scrutiny by a trained legal mind,' nor is facial validity to be judged in light of facts outside the writ's provisions which the person executing the writ may know."

*See also United States v. Morton*, 467 U.S. 822, 829 n. 10, 104 S.Ct. 2769, 2773 n. 10, 81 L.Ed.2d 680, 688 n. 10 (1984) (The court here considered the breadth of inquiry necessary to validate an exercise of *in personam* jurisdiction over a non-resident defendant versus the inquiry necessary to determine whether legal process was "regular on its face." The court concluded that the jurisdictional inquiry required a strict evaluation of the facts and law, while the determination of whether the process was regular on its face was much more limited.).

Given the foregoing, it is patently clear that the divorce decree thoroughly satisfies the requirements set forth in 10 U.S.C. § 1408(f)(1). Therefore, the defendant has unequivocally met the requirements of the statute and has properly disclaimed any amenability to a law suit resulting from its payment to Mrs. Goad. In light of this reasoning, we hold that the plaintiff has failed to state any facts upon which relief can be granted. The clarity of the language in the USFSPA, and the regularity of the divorce decree as a court order, have proven to be insurmountable obstacles for the plaintiff to overcome. Therefore, the defendant's motion to dismiss is hereby GRANTED, and the plaintiff's motion for summary judgment is DENIED as moot.

## CONCLUSION

In 10 U.S.C. § 1408(f)(1), the United States disclaims liability with respect to any payment made to a former spouse from retired pay. Therefore, the United States has not waived its immunity with respect to this particular form of payment made to Mrs. Goad. Furthermore, because the divorce decree at issue in this case conforms to the requirements of the USFS-PA, the plaintiff has no claim upon which to bring a suit in this court. As a result, this court must grant defendant's motion to dismiss. Therefore, the plaintiff's summary judgment motion is denied as moot. Given the foregoing disposition, it is sufficient to say that numerous contentions averred by plaintiff are totally void of merit. The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.