**Robert P. MORA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–684 C.

United States Court of Federal Claims.

Dec. 23, 2003.

———

Robert P. Mora, Pro se, plaintiff.

J. Reid Prouty, U.S. Department of Justice, Washington, D.C., with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Deputy Director, and Major Ira

Perkins, Of Counsel, Air Force Legal Services Agency for defendant.

## OPINION

MEROW, Senior Judge.

In this case, Robert P. Mora seeks judgment for the amount of retired military pay withheld from him and paid to his ex-wife since December 1, 1993. The case is before the court on plaintiff's motion for summary judgment and defendant's motion to dismiss. For the reasons asserted below, plaintiff's motion is DENIED and defendant's motion to dismiss is GRANTED.

### Facts

Mr. Mora is a retired member of the United States Air Force entitled to receive retired pay pursuant to 10 U.S.C. § 8929.[1] On August 10, 1993, plaintiff signed a Stipulated Decree of Dissolution of Marriage and Money Judgement ("divorce decree"). The divorce decree was signed by plaintiff's wife, Monica Mora, on August 2, 1993 and approved by the Circuit Court of the State of Oregon for Jackson County on August 11, 2003. On September 11, 2003, after 44 years of marriage, the divorce decree went into effect. The divorce decree provided:

> Retirement: Respondent shall receive 37.25% of Petitioner's military retirement to begin the month following the escrow on the sale of the real property. A Qualified Domestic Relations order, if necessary, will be entered as a supplemental order to effect the division of Petitioner's retirement. If such an order is necessary and is not effective at the time Respondent is to begin receiving her share of the military retirement, and if Petitioner continues to receive the full military retirement benefit, then he shall pay to Respondent her portion of the military retirement until such time as payments are made directly to Respondent. The Court shall retain continuing jurisdiction to enter any orders necessary to award Respondent her share of Petitioner's retirement.

Administrative Record ("AR") 7.

On October 24, 1993, Mrs. Mora filed DD Form 2293, "Application for Former Spouse

———

1. 10 U.S.C. § 8929 provides: "A member of the Air Force retired under this chapter is entitled to retired pay computed under chapter 871 of this title."

Payments from Retired Pay," with the Defense Finance and Accounting Service ("DFAS"), requesting direct payment from plaintiff's retired pay in the amount specified in the divorce decree. In the application, Mrs. Mora stated that a certified copy of the divorce decree had been sent to DFAS on September 22, 1993. In a letter dated November 12, 1993, DFAS informed plaintiff that it had received the application for a portion of his retired military pay and that it was required by law to pay the appropriate amount. The letter went on to explain:

> While the application appears to be valid, the Air Force has no way of knowing whether the court order may have been changed, superseded, or set aside. After reviewing enclosed documentation, if there are conflicting court orders, please provide an authenticated or certified copy of them. If such documents are not submitted within 30 days of the date of this letter, we expect to begin deducting the amounts due under this order beginning: December 1993 pay.
>
> . . . .
>
> In accordance with the court decree and the FSPA, payments will be 37.25 percent not to exceed 50 percent of monthly disposable pay.

Pl.'s Proposed Findings of Uncontroverted Fact ("PPFUP"), App. A.

The record contains no evidence that plaintiff contested the court order within the required 30 day period. Subsequently, DFAS began paying Mrs. Mora the amount withheld from plaintiff's retired military pay effective December 1993. The payment of plaintiff's retired military pay to his ex-wife was authorized by the Uniformed Services Former Spouses' Protection Act ("USFSPA" or "Act"), 10 U.S.C. § 1408. The USFSPA allows a state court to "treat disposable re-

tired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). The Act also directs the government, subject to certain limitations, to withhold and make direct payments to the former spouse in the amount specified in the court order.[2] Specifically, the USFSPA provides:

> After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse or former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse . . . .

10 U.S.C. § 1408(d)(1). The Act also requires that notice be given to the affected member.[3]

The USFSPA was enacted in response to the Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty*, the Supreme Court held that the Supremacy Clause precluded states from dividing a member's retired military pay pursuant to state community property laws. *See U.S. Const., Art. VI, Cl. 2.* At the time, Congress had "neither authorized nor required the community property division of military retired pay." *McCarty*, 453 U.S. at 232, 101 S.Ct. 2728. Therefore, state laws allocating a member's retirement benefits conflicted with federal law that military pay actually reach the beneficiary. Nevertheless, the Court noted that

---

**2.** 10 U.S.C. § 1408(a)(2) defines "court order" as: "a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree ... which—(C) in the case of a division of property, specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired pay, from the disposable retired pay of a member to the spouse or former spouse of that member."

**3.** 10 U.S.C. § 1408(g) states: "A person receiving effective service of a court order under this section shall, as soon as possible, but not later than 30 days after the date on which effective service is made, send a written notice of such court order (together with a copy of such order) to the member affected by the court order at his last known address."

"the plight of an ex-spouse of a retired service member is often a serious one." *Id.* at 235, 101 S.Ct. 2728. It also explained that "the questions of whether the retirement system should be amended so as better to accomplish its personnel management goals, and whether those goals should be subordinated to the protection of the service member's ex-spouse, are policy issues for Congress to decide." *Id.* at 235, n. 26, 101 S.Ct. 2728. As the Supreme Court stated, "Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority giving the States the power to treat military retirement pay as community property." *Mansell v. Mansell,* 490 U.S. 581, 588, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). The USFSPA was such an instance where, in response to the Court's invitation, Congress made a policy decision that a member's ex-spouse should be entitled to a member's retired military pay if allowed under state law.

### Discussion

### I. Summary Judgment

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rules of the Court of Federal Claims ("RCFC") 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted "if the dispute is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court must resolve all reasonable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. The burden on the moving party for summary judgment, to demonstrate that there is no genuine issue of material fact, may be discharged if it can show "that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting*

*Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987) (quoting *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). The burden then shifts to the non-moving party to produce evidence setting forth specific facts that there is a genuine issue for trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "Mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 627 (Fed.Cir. 1984) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984)) (holding that nonmovant "must set out, usually in an affidavit from one with personal knowledge of specific facts, what specific evidence could be offered at trial."). Instead, to create "a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

### B. Plaintiff's Contentions

Allegations made in a pro se complaint are held to "less strict standards than pleadings formally drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Forshey v. Principi,* 284 F.3d 1335, 1357–58 (Fed.Cir.2002) (en banc). However, plaintiff's status as a pro se plaintiff does not relieve him of his duty to establish jurisdiction over his claim. Plaintiff asserts jurisdiction in this court based on the Tucker Act, 28 U.S.C. § 1491(a)(1). The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any act of Congress or any regulation of an executive department, upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

In plaintiff's complaint and summary judgment motion, Mr. Mora has put forth several bases for his claim seeking judgment for the

amount of retired pay withheld from him and paid to his ex-wife.[4] First, he asserts that his retired military pay held by the Air Force is exempt from a writ of garnishment. In support of his contention, plaintiff relies upon *Buchanan v. Alexander,* 45 U.S. 20, 4 How. 20, 11 L.Ed. 857 (1846). In *Buchanan,* six writs of attachment were issued by a state court against members of the Navy. The Supreme Court held that money in the hands of the purser, due to the seaman for wages, was not attachable. The Court explained:

> The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended. So long as the money remains in the hands of a disbursing officer, it is as much the money of the United States, as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled it, the fund cannot, in any legal sense, be considered a part of his effects.

45 U.S. at 20–21. Therefore, the state could not approve such an attachment because it would contradict Congress' intention that the officers actually receive the money. In *McCarty,* the Supreme Court noted that Congress had previously amended the Civil Service and Foreign Service retirement systems to allow retirement benefits to be paid to an ex-spouse.[5] 453 U.S. at 231–32, 101 S.Ct. 2728. However, "in striking contrast to its amendment of the Foreign Service and Civil Service retirement systems, Congress has neither authorized nor required the community property division of military retired pay. On the contrary, that pay continues to be the personal entitlement of the retiree." *McCarty,* 453 U.S. at 231–32, 101 S.Ct. 2728. The Court concluded that "Congress may well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone. We very recently have re-emphasized that in no area has the Court accorded Congress greater deference than in the conduct and control of military affairs." *Id.* at 235–36, 101 S.Ct. 2728. In fact, Congress properly exercised such authority to rectify this distinction when it enacted the USFSPA.

Second, plaintiff argues that the Oregon state court which issued the divorce decree lacked jurisdiction over his retired military pay and had no authority to allocate payment to his ex-wife. Mr. Mora asserts that the state court was not a court of competent jurisdiction because it did not acquire personal jurisdiction over him or in rem jurisdiction over the retired pay.[6] As support for his argument, plaintiff cites to *Vaughan v. Northup,* 40 U.S. 1, 6, 15 Pet. 1, 10 L.Ed. 639 (1841) for the proposition that:

> The debts due from the government of the United States, have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the Union; and the debts due from them are not to be treated like the debts of a private

---

4. In plaintiff's August 4, 2003 filing, he moved to "strike out and disregard the government's claim of sovereign immunity." Defendant's reply was filed on August 11, 2003. There is no support for plaintiff's motion and it is thereby denied.

5. 5 U.S.C. § 8345(j)(1) provides: "Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based on service of that individual shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of—(A) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment or legal separation; ...."

22 U.S.C. § 4054(a)(1) provides: Unless otherwise expressly provided by any spousal agreement or court order under section 820(b)(1), a former spouse of a participant or former participant is entitled to an annuity if such former spouse was married to the participant for at least 10 years during service of the participant ...."

6. The legislative history of 10 U.S.C. § 1408 explains: "Competent jurisdiction denotes proper *in rem,* (or *quasi-in-rem*) and *in personam* jurisdiction. Competent jurisdiction could exist, in a proper case, under the theory of continuing jurisdiction if the court obtained proper jurisdiction over the parties and the property in question during the proceedings." S. REP No. 97–502, at 12 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1607.

debtor, which constitute local assets in his own domicile. *Vaughan,* 40 U.S. at 6. According to plaintiff's argument, because the retired military pay sought by Mrs. Mora was held by the United States Treasury and not located in the state of Oregon, the state court had no authority to order the Air Force to make payments to his ex-wife.

Plaintiff also contends that the payments violated the Anti–Assignment Act, 37 U.S.C. § 701(c)(1). The Anti–Assignment Act provides that "an enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void." *Id.* In a footnote in *McCarty,* the Supreme Court stated that "an Army enlisted man may not assign his pay. 37 U.S.C. § 701(c). While an Army officer may transfer or assign his pay account '[under] regulations prescribed by the Secretary of the Army,' he may do so only when the account is 'due and payable.'" 453 U.S. at 230, n. 22, 101 S.Ct. 2728. Plaintiff asserts that because he cannot sell, assign, transfer, or otherwise dispose of his right to retired pay, his retired pay is not subject to garnishment. Therefore, plaintiff submits that there can be no assignment of wages that have not yet been earned.

Plaintiff's next set of arguments centers around the assertion that the USFSPA violates several provisions of the Constitution of the United States. Plaintiff contends that the USFSPA violates the Due Process Clause of the Fifth Amendment because it does not provide for a notice, hearing, or other form of legal process before reducing his pay. Plaintiff asserts that the application provided to the DFAS was not accompanied by a summons, writ, order, or similar "legal process" issued by a court of competent jurisdiction. Therefore, plaintiff contends that the Act deprives all affected military personnel of access to a court whereby they could challenge the direct payment of funds to a former spouse. However, it is important to note that the Act requires the Air Force to provide notice to the affected member within 30 days of receiving notice of the application. *See* 10 U.S.C. § 1408(g). Furthermore, the record reveals that plaintiff made no attempt

to provide DFAS with an alternative court order or demonstrate that the amount specified in the court order was incorrect. Plaintiff also submits that the Act retroactively annuls the Supreme Court's decision in *McCarty* and therefore violates the principles of separation of powers. However, the Federal Circuit had held that, "while allowing state law to be applied retroactively, [USFSPA] itself had no direct effect, retroactive or otherwise, on division of payments." *Fern v. United States,* 908 F.2d 955, 959 (Fed.Cir. 1990). Finally, plaintiff asserts that the Act violates the nondelegation of powers because Congress cannot delegate its powers over military pay to state courts. Additionally, plaintiff argues that Congress cannot establish or define the jurisdiction of state courts. In *Fern v. United States,* 15 Cl.Ct. 580, 588 (1988), the Claims Court held that the Act "merely removed the interdict of federal preemption, thereby allowing state courts to adjudicate rights to military retirement pay in divorce proceedings according to state laws. It was the actions of state courts which apportioned plaintiffs' retirement pay with their ex-spouses, not the Federal Government."

## II. Motion to Dismiss

### A. Standard of Review

The matter is now before the court on defendant's motion to dismiss pursuant RCFC 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim upon which relief can be granted. The subject matter jurisdiction of this court is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir. 1998) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The Tucker Act, 28 U.S.C. § 1491(a), is merely jurisdictional and does not create a substantive right of recovery against the United States. *United States v. Testan,* 424 U.S. 392, 398, 96

S.Ct. 948, 47 L.Ed.2d 114 (1976). A claimant must "invoke substantive rights grounded expressly or by implication in a contract, an act of Congress, or a regulation of an executive department." *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc) (citing *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002 (1967)).

It is appropriate to grant a motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted when the facts asserted by the plaintiff do not entitle it to a remedy under the law. *See Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). In considering a motion to dismiss, the court construes all allegations in the light most favorable to the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991). The court must presume that the undisputed factual allegations included in the complaint are true. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed.Cir.1988). Dismissal of plaintiff's complaint "may stand only if the plaintiff alleges no set of facts which, if proved, would entitle him or her to relief." *Marshall–Silver Constr. Co. v. Mendel*, 894 F.2d 593, 595 (3rd Cir.1990).

### B. Defendant's Contentions

In its motion to dismiss, defendant argues that the USFSPA limits the court's jurisdiction to review payments of retired military pay to former spouses. Defendant contends that the government has not waived its sovereign immunity with regard to claims challenging payments to former spouses pursuant to a divorce decree regular on its face. Unless plaintiff can demonstrate that the divorce decree is irregular on its face or that DFAS violated the provisions of the Act, he has not pled a cause of action that can be heard by this court. As defendant notes, the Tucker Act does not provide an independent right of recovery. Therefore, absent a money-mandating statutory or regulatory provision, plaintiff has not met his burden of establishing jurisdiction. In support of its

contention, defendant relies upon the holdings in *Goad v. U.S.*, 24 Cl.Ct. 777 (1991), *aff'd*, 976 F.2d 747 (Fed.Cir.1992) (Table) and *Simanonok v. Simanonok*, 918 F.2d 947 (Fed.Cir.1990).

Based on the arguments presented, it is clear that plaintiff has failed to meet his burden that the United States has waived its sovereign immunity with regard to making direct payments to a former spouse under the USFSPA. In fact, the USFSPA explicitly provides:

> The United States and any officer and employee of the United States shall not be liable with respect to any payment made from retired or retainer pay to any member, spouse, or former spouse pursuant to a court order that is regular on its face if such payment is made in accordance with this section and the regulations prescribed pursuant to subsection (h).

10 U.S.C. § 1408(f)(1). Therefore, the United States has not consented to be sued for making payments to a former spouse under the USFSPA unless the court order is irregular on its face or if officials failed to follow the procedures established by the Act. It is in those situations only that the United States has waived its sovereign immunity. In a factually similar case, the Court of Federal Claims dismissed the plaintiff's complaint seeking judgment for retired military pay withheld from him and made to a former spouse under the USFSPA. *See Goad*, 24 Cl.Ct. 777. The court held that the United States had failed to waive its sovereign immunity under the Act. Instead, the court noted:

> In fact, another federal statutory provision explicitly removes any waiver of sovereign immunity on behalf of the United States with respect to direct payments of funds to a military spouse.... In view of the explicit foregoing provision, it is patently clear therefore, that the United States has not waived its immunity to permit a claim challenging the USFSPA, as would be required by the Tucker Act.

*Goad*, 24 Cl.Ct. at 784–85. While plaintiff argues that the holding in *Goad* is not binding, this court cannot ignore the persuasive reasoning contained in the court's decision.

*See RSH Constructors, Inc. v. United States,* 20 Cl.Ct. 1, 6, n. 10 (1990) ("The orders and opinions of a judge of coordinate jurisdiction constitute persuasive but not binding authority.") (quoting *Greenberg v. United States,* 1 Cl.Ct. 406, 407 (1983)). The facts underlying the court's rationale are similarly present in the current case. In *Goad,* the plaintiff was a retired member of the United States Air Force whose pay had been withheld pursuant to an application filed by his former spouse. There were no facts demonstrating that the court order was irregular on its face or that the proper procedure had not been followed. Likewise, the plaintiff made similar claims attacking the constitutionality of the USFS-PA. However, similar to Mr. Mora, the plaintiff in that case could not establish his burden that the government had waived its sovereign immunity under the Act.

Support for dismissing plaintiff's complaint is found in the Federal Circuit's discussion in *Simanonok v. Simanonok,* 918 F.2d 947 (Fed.Cir.1990). Although the Federal Circuit held that the district court lacked jurisdiction under the Little Tucker Act and therefore the Circuit did not have appellate jurisdiction, it found an alternative reason for denying jurisdiction. Assuming that the ten thousand dollar limitation did not decide the issue, the Federal Circuit noted:

> The foundation of Simanonok's suit is the asserted unconstitutionality of the [USFS-PA] and his claims against all defendants seek recovery for their actions in implementing and carrying out the [USFSPA]. Yet the [USFSPA] itself clearly deprives retirees such as Simanonok of any recovery from the United States or its agents merely for carrying out the Act—i.e. the [USFSPA] retracts any waiver of sovereign immunity which might be found elsewhere in the United States Code.... [T]his suit is at most a dispute over whether the [USFSPA] and the regulations enacted under it are constitutional; as such, § 1408(f)(1) expressly retains sovereign immunity for any claims arising out of compliance with the Act and its regulations.

*Simanonok,* 918 F.2d at 951–952. This is further supported by the Federal Circuit's

holding that the USFSPA was not a taking within the meaning of the Fifth Amendment. *See Fern,* 908 F.2d at 959 ("We conclude that the [USFSPA] has no economic impact on Fern's rights to military pay vis-a-vis the United States and is at best an indirect cause of the reduction in the amount of retired pay he may keep for himself under his divorce decree."). Therefore, plaintiff has not met his burden of establishing a waiver of the government's sovereign immunity.

Alternatively, plaintiff has not demonstrated that the court order is irregular on its face such that his claim would be within the jurisdiction of this court. The USFSPA provides:

> A court order is regular on its face if the order—
>
> (A) is issued by a court of competent jurisdiction;
>
> (B) is legal in form; and
>
> (C) included nothing on its face that provides reasonable notice that it is issued without authority of law.

10 U.S.C. 1408(b)(2). The divorce decree, entitled "Stipulated Decree of Dissolution of Marriage and Money Judgment," was issued by the Circuit Court of the State of Oregon for Jackson County. It contains the signatures of plaintiff, his ex-wife, and their respective attorneys. It is signed by the presiding judge and contains the filing date and corresponding case number. Additionally, it is stamped by the clerk of the court certifying it as a "true and correct copy of the original on file in the office." AR 9. As the court in *Goad* noted, the process of determining "whether such an order is regular on its face 'demands no inquiry beyond the face of the document.'" 24 Cl.Ct. at 786 (quoting *Millard v. United States,* 16 Cl.Ct. 485, 488 (1989), *aff'd,* 916 F.2d 1 (Fed.Cir.1990)). The divorce decree issued by the Circuit Court of Jackson County is identical to the court order described in *Goad.* Plaintiff has failed to identify any deficiencies in the court order that would render it irregular on its face. Therefore, the divorce decree signed by plaintiff and his former spouse satisfies the requirements of 10 U.S.C. § 1408(b)(2).

## CONCLUSION

(1) Plaintiff's Motion for Summary Judgement is **DENIED**;

(2) Defendant's Motion to Dismiss is **GRANTED**;

(3) Final Judgment shall be entered **DISMISSING** the Complaint, with **NO COSTS** assessed.