# United States Court of Appeals for the Federal Circuit

04-5127

JOHN JACOB WELLS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Michael H. Saul, of Marietta, Georgia, argued for plaintiff-appellant.

Kenneth M. Dintzer, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Stuart E. Schiffer, Deputy Assistant Attorney General, and David M. Cohen, Director.

Appealed from: United States Court of Federal Claims

Judge Lawrence M. Baskir

# United States Court of Appeals for the Federal Circuit

04-5127

JOHN JACOB WELLS,

Plaintiff- Appellant,

v.

UNITED STATES,

Defendant-Appellee.

———————————————

DECIDED:  July 29, 2005

———————————————


Before LOURIE, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Senior Circuit Judge</u> ARCHER.  Dissenting opinion filed by <u>Circuit Judge</u> LOURIE.

ARCHER, <u>Senior Circuit Judge</u>.

John Jacob Wells ("Wells") challenges monthly deductions from his Navy retirement pay as contrary to the express provisions of 5 U.S.C. § 5514(a)(1).  The statute prohibits monthly deductions greater than 15% of Wells' disposable pay.  Since 1991, following his conviction on federal drug charges, the government has deducted more than 15% of Wells' monthly retirement pay to defray his costs of incarceration.  On May 1, 2003, Wells filed this action in the United States Court of Federal Claims, seeking to recover the illegal deductions.  The trial court dismissed the action as time-barred under 28 U.S.C. § 2501.  Wells appeals, arguing that his § 5514 challenge is properly analyzed as a continuing claim, and that in any event § 2501 should be

equitably tolled in view of his various habeas corpus and § 2255 petitions. Because we agree that this action calls for application of the continuing claim analysis, we reverse and remand. We hold, however, that Wells has failed to allege facts sufficient to support his equitable tolling argument, and thus conclude that any challenge to deductions before May 1, 1997, are time-barred under § 2501.

I

Wells retired from the Navy before 1990 and thereafter received a gross monthly pension of $1,756.00. On May 16, 1991, Wells was convicted on drug-related charges in federal court in Florida. In addition to his 384-month prison sentence, the court imposed a $1,000 monthly cost-of-incarceration fine. On September 13, 1991, the United States Attorney asked the Navy Finance Center to provide that $1,000 as a monthly deduction from Wells' retirement pay. In due course the Navy complied with the request and garnished Wells' retirement pay.

Wells appealed his conviction and sentence, and the Eleventh Circuit affirmed. United States v. Norman, 3 F.3d 368, 369-70 (11th Cir. 1993). The court disagreed, however, with the cost-of-incarceration fine and thus vacated that portion of Wells' sentence and remanded for re-sentencing. On February 17, 1994, the district court entered an amended judgment. In it, the court imposed a $25,000 punitive fine to be paid from monies previously collected. The district court also noted in the amended judgment that the $25,000 punitive fine would be paid in full by June 1994. Thereafter, the court ordered, Wells "shall begin paying cost of imprisonment at the rate of $500.00 per month." The judgment had no provision for attaching Wells' Navy pension, either to pay the punitive fine or the remaining costs of incarceration.

In April 1994, the United States Attorney wrote the general counsel for the Defense Finance and Accounting Service ("DFAS") regarding Wells' pension. That letter stated that the $25,000 fine was "to be paid with Wells' retirement pay until June 1994." After outlining the $500 monthly costs of incarceration, the United States Attorney further "encourage[d]" DFAS "to continue making payments as delineated above until the court orders otherwise." The Defense Department complied with the Justice Department's request.

Following his re-sentencing Wells filed a series of 28 U.S.C. § 2255 petitions challenging the sentence. The government concedes that in those petitions Wells "addressed the incarceration fine, although he never sought to recoup the money already paid."

On May 1, 2003, Wells filed this action in the Court of Federal Claims, arguing that the $500 monthly deduction violates his rights under 5 U.S.C. § 5514(a)(1) and the Fifth Amendment. The statute prohibits monthly deductions from military pay in excess of 15% of disposable income or, in Wells' case, roughly $263, without written consent. In his complaint Wells also alleges that his third § 2255 petition, filed in August 2000 and not a part of the record here, sought "relief from the fines."

The trial court dismissed the action as time-barred under 28 U.S.C. § 2501. Wells v. United States, No. 03-871 C, slip op. at 6 (Fed. Cl. June 2, 2004). Wells appeals, and this court has jurisdiction under 28 U.S.C. § 1295(a)(3).

II

We review the legal aspects of a determination by the Court of Federal Claims that the appellant's claim was barred by the statute of limitations without deference.

Caldwell v. United States, 391 F.3d 1226, 1233 (Fed. Cir. 2004) (citing Applegate v. United States, 25 F.3d 1579, 1581 (Fed. Cir. 1994)).

III

In Brown Park Estates-Fairfield Development Co. v. United States, 127 F.3d 1449 (Fed. Cir. 1997), we articulated when the continuing claim doctrine applies:

> In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages. . . . However, a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim.

Id. at 1456.

Our predecessor court has held the continuing claim doctrine is applicable where "[e]ach wrong constitute[d] an alleged violation of a statute or regulation that occurred when that particular wrong occurred, independent of the accrual of other wrongs." Id. In Burich v. United States, 366 F.2d 984 (Ct. Cl. 1966), for example, Burich asserted that he was entitled to hourly-computed overtime rather than the premium payments he had received for his overtime work. Because compensation was due and payable periodically, we found that a claim arose each time the government allegedly failed to pay the proper amount of overtime pay and ruled that the continuing claim doctrine was available. Id. at 986-87; see also Beebe v. United States, 640 F.2d 1283, 1293 (Ct. Cl. 1981) (noting that a separate cause of action accrued each time overtime compensation was excluded from plaintiff's pay).

Similar findings were made in Batten v. United States, 597 F.2d 1385 (Ct. Cl. 1979). Batten involved a claim for periodic installments of back pay allegedly owed civilian employees of the Navy due to an hourly wage increase. While not needing to

reach the issue of the statute of limitations, we specifically noted that such facts gave rise to "a continuing claim involving multiple causes of action, each one arising at the time the Government fail[ed] to make the payment alleged to be due." Id. at 1387 n.10.

On the other hand, if there was only a single alleged wrong, even though the wrong caused later adverse effects, our case law has said the continuing claim doctrine is not applicable. Hart v. United States, 910 F.2d 815 (Fed. Cir. 1990), for example, involved a suit by the widow of a retired Air Force sergeant seeking annuity benefits allegedly due her since the date of her husband's death. She claimed that the government had violated a statute that required it to notify her of her husband's election not to participate in the survivor plan. We rejected Hart's assertion that a new claim accrued each time she was to be paid under the annuity and stated "[b]ecause all events necessary to her benefits claim had occurred when her husband died, we conclude that plaintiff's claim for . . . annuity benefits is not a 'continuing' claim." Id. at 818.

Similarly, in Lane v. United States, 208 Ct. Cl. 955 (1975), our predecessor court considered Lane's claim that he was illegally discharged from the Army and that he was therefore entitled to active duty pay from the date of discharge. The court held that it was barred by the statute of limitations, because the claim "accrue[d] all at once" upon Lane's discharge and he could not file suit more than six years from that date. Id. at 955-56.

As we explained in Brown Park Estates, these cases involve individuals who

really only pointed to one alleged wrong by the government, which accrued all at once at one point in time, even though it may have had later adverse effects. The plaintiffs' alleged later 'wrongs,' such as nonpayment of annuities or wages, were not independently accruing violations of any

statutes or regulations in themselves, but rather were merely damages resulting from the single earlier alleged violation by the government – such as lack of notification or wrongful discharge – that accrued outside the statute of limitations period.

Brown Park Estates, 127 F.3d at 1457.

The facts of this case are analogous to those in cases in which we have found the continuing claim doctrine applicable. Wells alleges that 5 U.S.C. § 5514 is violated each month money is deducted from his retirement pay for the cost-of-incarceration fine, because "the United States deduct[s] too much money from Mr. Wells' retirement pay."[1] (Amended Compl. At 2).

Section 5514(a)(1) expressly provides for monthly (or other periodic) deductions from retirement pay to satisfy debts due the United States, but the amount that can be deducted is strictly limited (unless otherwise provided by a written consent):

> <u>When the head of an agency</u> or his designee determines that an employee, member of the Armed Forces or Reserve of the Armed Forces, is indebted to the United States for debts to which the United States is entitled to be repaid at the time of the determination by the head of an agency or his designee, or <u>is notified of such a debt by the head of another agency or his designee the amount of indebtedness may be collected in monthly installments, or at officially established pay intervals, by deduction from the current pay account of the individual</u>. The <u>deductions may be made from</u> basic pay, special pay, incentive pay, <u>retired pay</u>, retainer pay, or in the case of an individual not entitled to basic pay, other authorized pay. <u>The amount deducted for any period may not exceed 15 percent of disposable pay</u>, except that a greater percentage may be deducted upon the written consent of the individual involved.

5 U.S.C. § 5514(a)(1) (emphases added). "Disposable pay" is defined to be "that part of pay of any individual remaining after the deduction from those earnings of any amounts

---

[1] It should be noted that Wells does not contend that the court-imposed cost-of-incarceration fine is erroneous or improper. He only asserts that the amount deducted from his retirement pay each month exceeds the 15% limit set forth in the statute as the maximum deduction. See 5 U.S.C. § 5514(a)(1).

required by law to be withheld." Id. § 5514(a)(5). Wells argues that each time the government took the "wrong amount," i.e., more than that permitted under 5 U.S.C. § 5514(a), "an independent wrong was committed," and therefore the continuing claim doctrine should be applicable. We agree.

Here Wells' claim can be broken down into a series of independent and distinct wrongs or events – deducting more than 15% of Wells' retirement pay – each such wrong or event having its own associated damages – the difference between the amount permissible under section 5514(a)(1) and the actual deduction. Each alleged wrong constituted an alleged violation of a statute or regulation – 5 U.S.C. § 5514(a) – that accrued when that particular wrong occurred, independent of the accrual of other wrongs.

The government argues that the United States Attorney's Office's request that the Navy deduct money from Wells' retirement pay each month to cover the cost-of-incarceration fine should be viewed as a triggering event that ultimately led to action causing the alleged harm, or, in the parlance of Brown Park Estates was a distinct event which may have continued ill effects later on. This argument ignores the fact that each time the money was withheld from Wells' retirement pay the statute limiting that amount was violated, thereby giving rise to a distinct claim.

Accordingly, the facts underlying Wells' claim fall squarely within the criteria set forth in Brown Park Estates describing situations in which the continuing claim doctrine is available.

IV

In addition to his continuing claim argument, Wells also argues that the statute of limitations, 28 U.S.C. § 2501, should be equitably tolled under the facts of this case. Because we hold that the continuing claim doctrine applies to the § 5514(a)(1) claims for the six year limitation period preceding the filing of the complaint herein, equitable tolling is only relevant to Wells' § 5514(a)(1) claims before May 1, 1997.

In Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990), the Supreme Court suggested that equitable tolling would apply "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period" or "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Wells argues that "types of defective claims that equitably toll the statute of limitations include the filing of an incorrect type of claim, or the filing of a claim in the wrong Court," citing Perez v. United States, 167 F.3d 913, 918 (5th Cir. 1999) (citing Burnett v. N.Y Cent. R.R. Co., 380 U.S. 424 (1965) ("[T]he basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.")).

We have yet to determine whether Congress intended equitable tolling to apply to the limitations period in 28 U.S.C. § 2501. See Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003); Frazer v. United States, 288 F.3d 1347, 1353 (Fed. Cir. 2002). We decline to decide this question today, because Wells has not made a sufficient factual showing to invoke equitable tolling in this case.

Wells has not "demonstrated that he 'did not sleep on his rights,' but rather actively pursued his claims before the statute of limitations had run." Specifically, Wells

04-5127                                    8

claims that the various petitions and motions he filed in the Georgia and Florida federal courts and the Eleventh Circuit sought the same relief that is being sought in this action. Those petitions and motions do not appear in the record below, and Wells has not pointed us to any relevant portion of the record on appeal supporting this contention. Instead, Wells simply makes the unsupported conclusory statement that he "continued his efforts to have a court rule on whether the United States was unlawfully deducting too much money from his pension."

In reviewing "a motion to dismiss for lack of jurisdiction, we accept as true the complaint's undisputed factual allegations." Massie v. United States, 166 F.3d 1184, 1187 (Fed. Cir. 1999). Even under that standard, however, the factual allegations in this action are insufficient. The complaint alleges only that Wells filed habeas petitions seeking relief from "the fines" imposed with his sentence. See, e.g., Compl. ¶ 18. None of the allegations in the complaint point to substantive provisions of the habeas petitions that Wells relies upon for his tolling argument, nor are facts alleged that would form the predicate for a tolling argument under Irwin. Further Wells has not shown that he "actively pursued his judicial remedies by filing a defective pleading during the statutory period." Irwin, 498 U.S. at 457-58.[2]

---

[2] The only indicator that Wells may have tried to challenge the deductions from his retirement pay is a brief statement in a November 19, 2002 opinion issued by the Eleventh Circuit. Nothing in the record suggests, however, that he diligently pursued his position that the deductions from his retirement pay were a violation of section 5514(a)(1).

Thus, even assuming that 28 U.S.C. § 2501 is subject to equitable tolling, we have nothing but attorney argument that tolling is warranted here. Accordingly, none of Wells' § 5514(a)(1) claims are saved by the theory of equitable tolling.[3]

V

Because the continuing claim doctrine is available on the facts of this case, the trial court's dismissal of Wells' complaint is reversed with respect to those claims accruing within six years of the date he filed suit in the trial court, and the case is remanded for proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>.

---

[3] To the extent Wells raised an issue of due process during oral argument, this issue could only be considered if equitable tolling were applicable. Since we have held Wells has not produced evidence sufficient to support equitable tolling, we do not reach this issue.

# United States Court of Appeals for the Federal Circuit

04-5127

JOHN JACOB WELLS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

LOURIE, Circuit Judge, dissenting.

I respectfully dissent from the majority's conclusion that the periodic deductions from Wells' retirement pay constituted continuing claims, such that the statute of limitations had not run on his suit for refund of those deductions made within six years of the filing of the suit. In my opinion, the Court of Federal Claims was correct in holding that one event—the 1994 decision by the Defense Department to deduct part of Wells' incarceration costs—occurred and caused all of the deductions from his retirement pay. Thus, since that event occurred more than six years before suit was filed in that court, 28 U.S.C. § 2501 bars any recovery for Wells.

The majority opinion sets out the relevant case law concerning the "continuing claim" doctrine. Most recently, we decided Brown Park Estates-Fairfield Development Co. v. United States, which makes the distinction between a claim "inherently susceptible to being broken down into a series of independent and distinct events" and one "based upon a single distinct event, which may have continued ill effects later on." 127 F.3d 1449, 1456 (Fed. Cir. 1997). Wells' claim here is based on a single distinct

event, the decision by the Defense Department to deduct part of Wells' retirement pay, not a series of independent events. That event set in train the continued ill effects of subsequent deductions.

Other relevant cases have led to mixed results on varied facts, but they support the conclusion of the Court of Federal Claims, even though they do not draw a clear line in distinguishing between continued ill effects arising from a single event versus a series of independent events, each having its own associated damages. For example, Hart v. United States, 910 F.2d 815 (Fed. Cir. 1990), and Lane v. United States, 208 Ct. Cl. 955 (1975), both involved assertions that a new claim arose each time that an annuity or payment was not made. In those cases, this court and its predecessor court held that the claim accrued upon the occurrence of an initial triggering event or a governmental act that served to fix the liability of the government, and they accordingly denied the applicability of the continuing claim doctrine. Hart, 910 F.2d at 818 ("Because all events necessary to her benefits claim had occurred when her husband died, we conclude that plaintiff's claim for . . . annuity benefits is not a 'continuing' claim."); Lane, 208 Ct. Cl. at 955-56 ("A claim for active duty pay must be brought in this court within six years of the discharge date. A claim based upon an illegal discharge is not, as plaintiff suggests, a continuing claim, but rather 'accrues all at once' upon the claimant's removal." (citations omitted)).

In Batten v. United States, 597 F.2d 1385 (Ct. Cl. 1979), which also involved a claim for periodic installments of back pay, the Court of Claims stated, in dictum, that a claim arose each time the government failed to make a payment alleged to be due. Id. at 1387 n.10. That case is distinguishable by the fact that the court never reached the

statute of limitations issue. <u>Id.</u> at 1387. <u>Burich v. United States</u> involved overtime pay, which presumably was variable and therefore had to be determined for each pay period, and the Court of Claims, citing the "erratic and irregular" nature of overtime work, held that a new claim arose each time the proper overtime payment was not made. 366 F.2d 984, 988 (Ct. Cl. 1966). The fact that the overtime payment varied depending upon the amount of overtime worked distinguishes that case as well. Those were distinct events.

I thus conclude that, when a statute of limitations issue is involved, leading to all the subsequent consequences, and one determination of the amount of the benefit payable has been made, our cases hold that the continuing claim doctrine does not apply. I believe they govern here.

The majority here bootstraps its conclusion by emphasizing Wells' assertion that the deductions from his pay were in violation of 5 U.S.C. § 5514. However, that is a merits issue, and, unless Wells can overcome the limitations problem through the continuing claim doctrine, he cannot contest a merits issue such as the statutory violation claim. He cannot assert a merits claim that he is not entitled to litigate as the means to pry open the courtroom door that is barred to him on the merits claims.

Accordingly, I respectfully dissent from the court's application of the continuing claim doctrine to permit Wells to litigate a claim that accrued more than six years before he filed suit in the Court of Federal Claims. I therefore would affirm the judgment of that court.