Joseph F. BAKA, Plaintiff,

v.

The UNITED States, Defendant.

No. 06-348C.

United States Court of Federal Claims.

Nov. 29, 2006.

Joseph F. Baka, Leechburg, Pennsylvania, pro se.

Dawn S. Conrad, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

This case is before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for judgment on the administrative record. Plaintiff Joseph Baka alleges that the Government, acting through the Defense Finance and Accounting Service ("DFAS"), improperly enforced a 1986 California divorce decree awarding a portion of his military retirement pay to his former spouse. For the reasons stated below, most of Plaintiff's claim is barred by the applicable statute of limitations, 28 U.S.C. § 2501. Defendant is entitled to judgment on the remainder of Plaintiff's claim because the California divorce decree is "regular on its face" and Government officials followed the procedures established under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 ("the Act"). *See Mora v. United States,* 59 Fed.Cl. 234 (2003); *Goad v. United States,* 24 Cl.Ct. 777 (1991), *aff'd,* 976 F.2d 747 (Fed.Cir.1992).

**1.** Prior to 1991, Navy service members and their dependents applied to the NFAA for matters such as child support, alimony and debt satisfaction. In 1991, the Secretary of Defense created DFAS to consolidate the finance and accounting activities for the Defense community.

## Background

Chief Petty Officer Joseph F. Baka retired from the United States Navy on October 3, 1977, whereupon he became eligible for retirement pay. Administrative Record ("AR") at 8. On July 17 1986, the Superior Court of California, San Diego County, entered a final Judgment of Dissolution of the marriage of Mr. Baka and his wife, Claire Baka. AR at 6–12. The California Court incorporated into the final Judgment a June 22, 1984 stipulation by Mr. and Mrs. Baka, granting to Claire Baka approximately one third of Plaintiff's retirement pay. AR at 8–12.

Two months after entry of the final Judgment, Claire Baka applied to the Navy Family Allowance Activity ("NFAA")[1] for payment of her share of Mr. Baka's retirement pay pursuant to 10 U.S.C. § 1408. The Government approved Claire Baka's request, and in November 1986 began withholding $273.91 per month from Mr. Baka's retirement pay. AR at 54–55.

Twenty years later, on May 1, 2006, Mr. Baka filed a complaint in this Court claiming "the wrongful and unlawful taking of a portion of my earned military retired pay" in violation of 10 U.S.C. § 1408 and 32 C.F.R. § 63.6 (1985).[2] (Complaint ¶ 1). The complaint contains the following specific allegations:

1. That the NFAA erroneously enforced the California court decree designating Plaintiff's retirement pay as community property to which Claire Baka was partially entitled, in violation of various subsections of 32 C.F.R. § 63.6. *Id.* ¶¶ 6, 7.

2. That the California court lacked subject matter jurisdiction to designate Plaintiff's retirement pay as community property, and lacked personal jurisdiction over Plaintiff with respect to the divorce proceedings. *Id.* ¶¶ 8, 11.

3. That the California court erroneously awarded Claire Baka a portion of

**2.** The NFAA received Ms. Baka's application for benefits in September 1986, and therefore the Act's 1985 regulations apply to the Court's analysis and discussion.

Plaintiff's "gross" monthly retirement annuity, rather than his "disposable" retirement pay, in violation of 32 C.F.R. § 63.6(c)(8). *Id.* ¶ 15.

4. That DFAS unlawfully continued to enforce the California court order after Ms. Baka's death on October 25, 2004, in violation of 32 C.F.R. § 63.6(h)(3). *Id.* ¶ 21.

Mr. Baka claims that the Government's actions injured him in the amount of $79,753.92. *Id.* ¶ 26.

In response, Defendant alleges that the relevant statute of limitations in 28 U.S.C. § 2501 deprives this Court of jurisdiction for the majority of Plaintiff's claim. (Defendant's Motion at 8–11). In the alternative, Defendant argues that the administrative record demonstrates that the California court decree was "regular on its face" and that Government officials complied with the Act and all applicable regulations in accepting Claire Baka's application and honoring the California decree. *Id.* at 11–18. Defendant finally argues that, to the extent NFAA and DFAS erred in withholding Plaintiff's retirement pay after Claire Baka's death on October 25, 2004, Mr. Baka has been reimbursed. *Id.* at 18–19.

### Standard of Review

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true the undisputed allegations in the complaint, and draws all inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746 (Fed.Cir.1988). Where Plaintiff appears *pro se,* his pleadings are construed "liberally," and held to "less stringent standards than formal pleadings drafted by lawyers." *McSheffrey v. United States,* 58 Fed. Cl. 21, 25 (2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). This liberal standard does not, however, relieve Plaintiff of his burden to establish jurisdiction by a preponderance of the evidence. *Tindle v. United States,* 56 Fed. Cl. 337, 341 (2003).

In determining whether Plaintiff has met his burden, the Court may look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." *Lechliter v. United States,* 70 Fed.Cl. 536, 543 (2006) (citing *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir. 1991)). In the present case, both Defendant and Plaintiff have submitted documents in support of their pleadings. The Court will refer to these materials "to the extent that they allow the court to determine whether it has jurisdiction over this case." *Id.*

### Statute of Limitations

Plaintiff's claim arises under 28 U.S.C. § 1491, which grants this Court jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department[.]" 28 U.S.C. § 1491(a)(1) (the "Tucker Act"). Because the Tucker Act "does not itself confer a substantive right of recovery," plaintiffs in this Court "must invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department." *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983). Mr. Baka invokes the substantive rights in 10 U.S.C. § 1408 to establish jurisdiction and the necessary waiver of sovereign immunity.

Though jurisdiction may lie when a plaintiff's claim first accrues, the passage of the limitations period eventually will destroy the Court's jurisdiction to render a decision. "It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature." *Martinez v. United States,* 333 F.3d 1295, 1316 (Fed.Cir.2003). Moreover, the limitations period is "an essential element of a plaintiff's claim under the Tucker Act that must be strictly construed, and may not be waived by either the court or the parties." *Centers v. United States,* 71 Fed.Cl. 529, 536 (2006) (citing *Forman v. United States,* 329 F.3d 837, 841–42 (Fed.Cir.2003)).

The limitations period in the Tucker Act begins to run "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Centers,* 71 Fed.Cl. at 536 (citing *Brighton Village Assocs. v. United States,* 52

F.3d 1056, 1060 (Fed.Cir.1995)). Thereafter, plaintiffs have six years in which to file their claim. 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). Mr. Baka filed his complaint on May 1, 2006, and therefore he must establish by a preponderance of the evidence that his claims first accrued on or after May 1, 2000, or that some time-bar saving doctrine applies. *See Entines et al. v. United States,* 39 Fed.Cl. 673, 678 (1997).

In his response to Defendant's motion to dismiss, Plaintiff alleges that his claim first accrued upon his receipt of a February 22, 2003 DFAS letter, which cited 32 C.F.R. § 63.6(c)(8). (Response at 2–3). He also asserts that the continuing claims doctrine applies to his case. *Id.* at 4.

### Accrual of Plaintiff's Claims

As noted, a plaintiff's claim first accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Centers,* 71 Fed.Cl. at 536. Relevant to Mr. Baka's claim are the following undisputed facts:

1. NFAA received Claire Baka's claim for a portion of Plaintiff's retirement pay on September 25, 1986. AR at 54.

2. NFAA notified Plaintiff in a letter dated September 29, 1986 that it received Claire Baka's application. AR at 54–55. According to that letter:

 [A]ction will be taken to comply with the enclosed [California] court order so that $273.91 per month will be deducted from your retired pay and paid over to Claire Baka. Deductions should begin November 1986 and will continue until we receive further order from the aforementioned court or upon death of either party. The above amount will be adjusted periodically to reflect any adjustments to your retired pay.

3. Pursuant to 10 U.S.C. § 1408, NFAA directed an initial payment to Claire Baka on or about December 1, 1986. AR at 54–55.

4. Plaintiff first challenged the Government's payments to Claire Baka in a letter to DFAS dated July 15, 2001. In that letter, Plaintiff requested "that no further division of retired pay be made using the [California] court order as authority." AR at 53. Plaintiff continued to press his claim with the DFAS Garnishment Operations office in the years thereafter.[3]

5. In correspondence dated December 16, 2004, Plaintiff notified DFAS of Claire Baka's October 25, 2004 death. AR at 13.

6. Following Claire Baka's death, DFAS continued to deduct her benefits from Plaintiff's retirement pay in error until March 2005. AR at 2. In a July 21, 2006 DFAS letter to Plaintiff, the Government provided an explanation to Plaintiff of the erroneous payment. *Id.* DFAS informed Plaintiff that:

 [a] retired pay credit was paid to the retired pay account of Mr. Baka in the amount of $2404.56 on 5/2/05. Therefore, the entire amount improperly deducted from Mr. Baka's retirement pay after his former spouse's death was repaid to his account on 5/2/05.

If Plaintiff is correct that the Government erred in some way by honoring the California divorce decree, Plaintiff's claim would have accrued as of December 1, 1986 when the NFAA first directed a portion of Plaintiff's retirement pay to Claire Baka. At that point, "all the events [had] occurred which fix[ed] the liability of the Government and entitle[d] the claimant to institute an action." *Centers,* 71 Fed.Cl. at 536. *See also Kosmo v. United States,* 72 Fed.Cl. 46, 53 (2006) ("In military pay cases, 'the date of accrual . . . is the date on which the service member was denied the pay to which he claims entitlement.' "). Accordingly, absent a valid continuing claim, the Court's jurisdiction over Plaintiff's claim expired on December 1, 1992.

### Continuing Claims Doctrine

 The continuing claims doctrine "operates to save parties who have pled a series

---

**3.** *See, e.g.,* AR at 46 (letter and attachments from Plaintiff to "Mr. Krushinski" dated March 18, 2002); AR at 25 (letter and attachments from Plaintiff to DFAS dated May 13, 2002); AR at 24 (letter from DFAS to Plaintiff referencing a letter from Plaintiff dated February 4, 2003).

of distinct events-each of which gives rise to a separate cause of action-as a single continuing event. In such cases, the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events." *Ariadne Fin. Servs. Pty. Ltd. v. United States,* 133 F.3d 874, 879 (Fed.Cir.1998) (citing *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1456 (Fed.Cir.1997); *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381, 384–85 (1962)). In language frequently cited by this Court and the Federal Circuit, "[i]n order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *See, e.g., Brown Park Estates,* 127 F.3d at 1456; *Wells v. United States,* 420 F.3d 1343, 1345 (Fed.Cir.2005).

▮ Likewise, the continuing claims doctrine has been applied when the Government owes "a continuing duty" to a plaintiff. *Boling v. United States,* 220 F.3d 1365, 1373 (Fed.Cir.2000). "In such cases, each time the government breaches that duty, a new cause of action arises." *Id.* The doctrine does not apply, however, "in cases where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach." *Id.* (citation omitted).

▮ The Federal Circuit recently reviewed the distinction between a continuing claim and a single-event claim in *Wells,* 420 F.3d 1343. In that case, plaintiff Wells challenged the legality of monthly deductions taken from his Navy retirement pay in order to defray the costs of his incarceration for a criminal conviction. Wells argued that the amount of the deductions exceeded the amount permitted by the relevant statute, 5 U.S.C. § 5514(a)(1). *Wells,* 420 F.3d at 1344. This Court dismissed Wells' claim for lack of jurisdiction, citing expiration of the statute of limitations under 28 U.S.C. § 2501. *Id.* at 1345; *Wells v. United States,* No. 03–871C, slip op. at 6 (Fed.Cl. June 2, 2004). The Federal Circuit reversed, concluding that "each time the money was withheld from Wells' retirement pay the statute limiting that amount was violated, thereby giving rise to a distinct claim." *Wells,* 420 F.3d at 1347.

While the test for distinguishing continuing claims from single-event claims may not admit of easy or consistent application,[4] the majority's analysis in *Wells* and other case law clearly places the present case in the "continuing claims" category. In military pay cases, a threshold question can be framed as whether the plaintiff is challenging the *quantum* of pay to which he is undisputedly entitled, or whether he is challenging his right to receive pay at all.[5]

Cases often cited as belonging to the *quantum* category include *Burich v. United States,* 177 Ct.Cl. 139, 366 F.2d 984 (1966), *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283 (1981), and *Batten v. United States,* 220 Ct.Cl. 327, 597 F.2d 1385 (1979). In each of these cases, the plaintiff challenged his *rate* of pay. In the other category are *Hart v. United States,* 910 F.2d 815 (Fed.Cir.1990), and *Lane v. United States,* 208 Ct.Cl. 955, 1975 WL 7116 (1975). *See Wells,* 420 F.3d at 1346; *Brown Park Estates,* 127 F.3d at 1456–58. The plaintiff in *Hart* initiated a suit for survivor benefits eight years after her husband's death. 910 F.2d at 816–17. In *Lane,* the plaintiff sought active duty pay for the period following his

---

4. Circuit Judge Lourie's dissent underscores the difficulty of applying the continuing claims analysis to pay cases. *Wells,* 420 F.3d at 1348–49 ("Other relevant cases have led to mixed results on varied facts . . . even though they do not draw a clear line in distinguishing between continued ill effects arising from a single event versus a series of independent events, each having its own associated damages.").

5. Cases in which a plaintiff undisputedly is entitled to *some* pay more plainly fall into the continuing claims category. On the other hand, where a plaintiff has received *no* pay for the limitations period, and plaintiff's entitlement to pay is *itself* disputed, the Government's failure to pay plaintiff has not been regarded as periodic Government action for purposes of the continuing claims doctrine. "This court has long adhered to the view that a suit for compensation *due and payable* periodically is, by its very nature, a 'continuing claim[.]' " *Burich v. United States,* 177 Ct.Cl. 139, 366 F.2d 984, 986 (1966) (citing *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962)) (emphasis added).

discharge from the Army. 208 Ct.Cl. at 955. The Court rejected both plaintiffs' continuing claims arguments. In both cases:

> The plaintiffs' alleged later "wrongs," such as *nonpayment* of annuities or wages, were not independently accruing violations of any statutes or regulations in themselves, but rather were merely damages resulting from the single earlier alleged violation by the government—such as lack of notification or wrongful discharge—that accrued outside the statute of limitations period.

*Brown Park Estates,* 127 F.3d at 1457 (emphasis added).

Like *Burich, Beebe,* and *Batten,* this case involves a challenge to periodic deductions from Plaintiff's retirement pay. Whereas the plaintiff in *Wells* alleged that the Government violated 5 U.S.C. § 5514 "each month money [was] deducted from his retirement pay for the cost-of-incarceration fine," the Court interprets Mr. Baka's pleadings to allege that the Government violated 10 U.S.C. § 1408 every month money was deducted from his retirement pay for the benefit of Claire Baka. *See Wells,* 420 F.3d at 1346. Under the Federal Circuit's reasoning, therefore, Plaintiff has alleged a continuing claim. The claim can be divided into discrete wrongs, each of which is deemed to have accrued in the month when the Government withheld a portion of Mr. Baka's retirement pay for the benefit of his former wife. The Court has jurisdiction to reach the merits of Mr. Baka's complaint to the extent that these individual claims accrued on or after May 1, 2000.

Concerning the payments made to Claire Baka after her death, Plaintiff does not challenge the correctness of the credits subsequently applied to his retirement pay account, and therefore that question is moot. *See* Plaintiff's Response at 4 ("DFAS recalculated my pay for each month [following Claire Baka's death] ... and compensated Plaintiff for that lost pay."). The Court's review therefore is limited to the propriety of the deductions from Plaintiff's retirement pay between May 1, 2000 and Ms. Baka's death on October 25, 2004.

*Sovereign Immunity*

◼ Just as this Court is without jurisdiction to entertain claims falling outside the limitations period, it is also powerless to decide issues where the United States has not waived sovereign immunity. Plaintiff has failed to establish such a waiver in the present case, and therefore this Court is without jurisdiction to grant Plaintiff the requested relief.

While the Tucker Act represents a waiver of the United States' sovereign immunity for certain claims against the United States, Congress may limit that waiver by statute, and has done so explicitly in 10 U.S.C. § 1408(f)(1). *See, e.g., Goad,* 24 Cl.Ct. at 784 (stating that the Act "explicitly removes any waiver of sovereign immunity on behalf of the United States with respect to the direct payment of funds to a military spouse."). Subsection (f)(1) of the Act, "Immunity of officers and employees of the United States," provides:

> The United States and any officer and employee of the United States shall not be liable with respect to any payment made from retired or retainer pay to any member, spouse, or former spouse pursuant to a court order that is regular on its face if such payment is made in accordance with this section and the regulations prescribed pursuant to subsection (h).

10 U.S.C. 1408(f)(1). Accordingly, "the United States has not consented to be sued for making payments to a former spouse under [the Act] unless the court order is irregular on its face or if officials failed to follow procedures established by the Act." *Mora,* 59 Fed.Cl. at 240. *See also Goad,* 24 Cl.Ct. at 784–85. With these principles in mind, the Court considers first whether the California divorce decree is "regular on its face."

In the factually similar Mora decision, this Court dismissed plaintiff's case when he failed to demonstrate that the relevant state court order was "irregular on its face such that his claim would be within the jurisdiction of this court." *Mora,* 59 Fed.Cl. at 240. There, plaintiff Mora sought judgment for the amount of his retirement pay withheld by DFAS and paid to his former spouse under the Act. *Id.* at 234. Like Mr. Baka, Mr.

Mora divorced his wife pursuant to the terms of a "Stipulated Decree of Dissolution of Marriage and Money Judgment" approved and entered by a state court. *Id.* Under the terms of the stipulated decree and the provisions of the Act, Mrs. Mora became entitled to approximately one third of Mr. Mora's Air Force retirement pay. *Id.*

Referring to 10 U.S.C. § 1408(b)(2), the Mora Court reviewed the statutory criteria to determine whether the state court order was "regular on its face." That subsection of the Act provides:

(2) a court order is regular on its face if the order-

 (A) is issued by a court of competent jurisdiction;

 (B) is legal in form; and

 (C) includes nothing on its face that provides reasonable notice that it is issued without authority of law.

*Mora,* 59 Fed.Cl. at 240; 10 U.S.C. § 1408(b)(2). After first observing that its review of the Oregon court order "demands no inquiry beyond the face of the document," the Court found that the order was indeed regular on its face. *Mora,* 59 Fed.Cl. at 240. The Court cited the following reasons for its conclusion: (1) the order contained the signatures of plaintiff, his ex-wife, and their respective attorneys; (2) it was signed by the presiding judge and contained the filing date and corresponding case number; and (3) it was stamped by the clerk of the court certifying it as a "true and correct copy of the original on file in the office." *Id.*

The California court order in this case bears the same characteristics. The stipulation attached to the order is signed by Plaintiff and his attorney, and by Claire Baka and her attorney. AR at 12. The order also is signed by the presiding judge, and contains the filing date and corresponding case number. AR at 6. In an attachment appended to the front of the order, the clerk of the California court has attested that the document is a true copy of the court order. AR at 5. Therefore, pursuant to the criteria set forth in the Act and in light of precedent, the Court concludes that "the divorce decree signed by plaintiff and his former spouse satisfies the requirements of 10 U.S.C.

§ 1408(b)(2)." *Mora,* 59 Fed.Cl. at 240. The California divorce decree here is regular on its face.

The Court next turns to the question of whether government officials failed to follow any procedures established by the Act or the applicable regulations. Addressing the requirements of 32 C.F.R. § 63.6, the Court determines as follows: (1) The July 17, 1986 California order satisfies the requirement for a "final decree;" (2) The California order identifies Mr. Baka as "the member" subject to the terms of the order; (3) The California court had personal jurisdiction over Mr. Baka by virtue of his appearance and participation in the divorce proceedings there, and DFAS had no obligation to inquire further; (4) DFAS properly applied Claire Baka's percentage award to Mr. Baka's "disposable" pay, and explained its interpretation to Mr. Baka in a February 22, 1983 letter, AR at 24; and (5) DFAS, after correcting its initial error, terminated its payments to Claire Baka upon being notified of her death, and refunded to Mr. Baka all such erroneous deductions.

Although Mr. Baka claims that he is a resident of Pennsylvania and that the California court lacked personal jurisdiction over him, a person "consents" to the personal jurisdiction of a court by participating in a proceeding. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived ... [R]egardless of the power of the State to serve process, an individual may submit to the jurisdiction of the court by appearance.") (citation omitted). *See also Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724, 729 (2d Cir.1998) ("The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not. Thus, when a defendant appears and challenges jurisdiction, it agrees to be bound by the court's determination on the jurisdictional issue.") (citation omitted).

The DFAS website specifically explains this principle to service members in a "Uniformed Services Former Spouses' Protection Act Bulletin Fact Sheet."

[T]o enforce orders dividing retired pay as property, *the state court must have had jurisdiction over the member by reason of,* (1) the member's residence in the territorial jurisdiction of the court (other than because of his military assignment), (2) the member's domicile in the territorial jurisdiction of the court, or (3) *the member's consent to the jurisdiction of the court, as indicated by the member's taking some affirmative action in the legal proceeding.*

*See* DFAS website, *available at* http://www.dod.mil/dfas/militarypay/garnishment/fsfact.html (last visited November 28, 2006) (emphasis added).

Based upon the foregoing, even after drawing all inferences in Mr. Baka's favor, the evidence is insufficient to demonstrate that the Government "failed to follow procedures established by the Act." *Mora,* 59 Fed. Cl. at 240; *see also Goad,* 24 Cl.Ct. at 784–85. Noncompliance with the Act's regulations is a condition of the Government's waiver of sovereign immunity. Lacking such waiver here, the Court concludes that it is without jurisdiction to review the merits of Plaintiff's claim.

### Conclusion

Defendant's motion to dismiss or for judgment on the administrative record is GRANTED. The Clerk shall dismiss with prejudice Plaintiff's claims that predate May 1, 2000, and shall enter judgment for Defendant on Plaintiff's claims that accrued after May 1, 2000. Plaintiff's claim that DFAS continued payments after Claire Baka's death is dismissed as moot.

IT IS SO ORDERED.